A05A0905. SMITH v. THE STATE.

(618 SE2d 182)

SMITH, Presiding Judge.

Craig Smith, a/k/a Anthony Robinson, was charged with two counts of armed robbery, two counts of robbery, aggravated assault, and theft by receiving stolen property. He pled guilty, and he now appeals from the denial of his motion to withdraw the guilty plea. Smith raises five enumerations of error, including ineffective assistance of trial counsel, the trial court's acceptance of his plea, the trial court's failure to appoint counsel for the hearing on the motion to withdraw the plea, and violation of his right to due process. We find no merit in any of Smith's contentions, and we affirm the trial court's denial of Smith's motion to withdraw his guilty plea.

1. Smith contends that the trial court erred in denying the motion to withdraw his guilty plea because his trial counsel was ineffective. On appeal from the denial of a motion to withdraw a guilty plea the trial court's refusal to permit withdrawal of the plea will not be disturbed absent manifest abuse of discretion. *Beck v. State,* 222 Ga. App. 168 (473 SE2d 263) (1996).

(a) Smith offers several arguments in support of his contention that his appointed trial counsel was ineffective.

> In the context of guilty pleas, the two-prong test for establishing ineffective assistance of counsel enunciated in *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) employs a standard of objective reasonableness with regard to counsel's performance and requires that the defendant establish the reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

(Citations omitted.) *Brantley v. State,* 268 Ga. 151, 152 (1) (486 SE2d 169) (1997). See also *McCloud v. State,* 240 Ga. App. 335 (1) (525 SE2d 701) (1999).

Smith first argues that counsel's performance was ineffective because trial counsel should have apprised him of certain "problems" in the State's case in advance of the plea hearing. In the period before trial, conflicts arose between Smith and his appointed trial attorney, an assistant public defender. Smith filed a bar grievance against his attorney. At arraignment, Smith's attorney suggested on the record that because of the conflict he thought Smith "would be better served with an attorney outside of the public defender's office," but that was not the policy of his office. The transcript does not indicate that the trial court took any action at that hearing regarding the attorney-client conflict. Six days before his trial was to begin, however, Smith informed the trial court that he had definitely decided to represent himself. The trial court granted Smith's request but also instructed Smith's appointed counsel to be present on a stand-by basis "during all motions, during jury selection, during the trial of the case and during sentencing if there is a guilty verdict."

Smith continued to represent himself at the hearing on his motion to suppress inculpatory statements he made to the police officers, and the trial court denied the motion. The State informed the court at the conclusion of the hearing that it had extended to Smith a plea offer with a sentencing recommendation and that the recommendation would be withdrawn at the end of the day. After consulting with his appointed stand-by counsel, Smith elected once again to accept counsel's representation. He also agreed to accept the State's

offer of a negotiated plea of guilty to robbery as a lesser included offense of the two counts of armed robbery and guilty to the remaining counts. The court accepted the negotiated plea, and Smith entered the plea in open court.

The record shows that both the State and Smith's trial counsel mentioned the "problems" with the State's case before Smith entered his plea. These "problems" were all irrelevant, however, because Smith confessed to all the offenses, pointed out to police officers the locations where they occurred, and told them he had committed the crimes because he owed money to a drug dealer who had "put a hit on him."

It is true that some doubt existed as to Smith's use of a gun during the armed robberies. But regardless of whether Smith actually had a gun, the record shows that he sought to take the victims' property by suggesting to the victims that he did.

> OCGA § 16-8-41 (a) . . . includes concealed offensive weapons provided there is either a physical manifestation of the weapon or some evidence from which the presence of a weapon may be inferred. The question is whether the defendant's acts created a reasonable apprehension on the part of the victim[s] that an offensive weapon was being used, regardless of whether the victim[s] actually saw the weapon.

(Citations and punctuation omitted.) *Jones v. State*, 236 Ga. App. 330, 334 (4) (511 SE2d 883) (1999). Here, the record shows that the two armed robbery victims "were in reasonable apprehension that there was a gun," satisfying this statutory element.

At the hearing on his motion to withdraw his guilty plea, Smith again acted as his own counsel, and he called his trial attorney as a witness. Trial counsel was not able to answer any of Smith's questions regarding communications between them or recommendations he may have made while he was representing Smith, because Smith refused to waive his attorney-client privilege. Smith was therefore unable to support his allegations regarding trial counsel's deficiencies.

(b) In a separate enumeration, Smith maintains that his plea counsel was ineffective because he failed to challenge Count 5 of the indictment. He argues, incorrectly, that Count 5 of the indictment was flawed because in charging him with aggravated assault, it failed to specify that the offense was committed with a deadly weapon, as provided in OCGA § 16-5-21 (a) (2). He fails to recognize, however, that this count alleged that Smith committed assault with intent to rob the victim, which is specified in the statute as another way of committing aggravated assault. OCGA § 16-5-21 (a) (1). Because the

indictment was not flawed, any challenge by plea counsel would have been futile. Failure to pursue a meritless challenge cannot amount to ineffective assistance of counsel. *Kemp v. State*, 257 Ga. App. 340, 341 (2) (571 SE2d 412) (2002).

2. Smith also alleges that his plea was not intelligent or voluntary. The stated basis for this allegation was Smith's testimony that he "did not understand the nature of the constitutional protection that [he] was waiving" and that he had "an incomplete understanding of the charge." We do not agree.

When a prisoner challenges the validity of a guilty plea, the State has the burden of showing that the plea entered was intelligent and voluntary. The State may carry this burden in two ways. It may show through the record of the plea hearing that the defendant knew all the rights he was waiving by pleading guilty and the possible consequences of the guilty plea. Alternatively, the State may use extrinsic evidence that shows affirmatively that the plea was knowing and voluntary. *Rowe v. State*, 246 Ga. App. 855 (542 SE2d 578) (2000). A trial court has discretion to permit the withdrawal of a guilty plea, and we will not reverse a trial court's refusal to permit withdrawal of the plea absent a manifest abuse of discretion. Id.

Here, the State points to the transcripts, which reflect in detail that Smith's entry of the guilty plea was both knowing and voluntary. Smith stated he did not understand the charges against him. But when Smith first announced he was going to represent himself, the prosecutor went through each count of the indictment in detail "to ensure that he is aware of the consequences and what he faces if he represents himself." The State also explained to Smith each possible punishment and the possible defenses on each count. The plea hearing transcript shows that the State then repeated again its detailed explanation of the charges and their factual basis and informed Smith of all the rights he was giving up by pleading guilty. The record therefore shows that Smith's plea was made knowingly and voluntarily.

3. Smith next contends that the trial court should have appointed counsel to represent him at the hearing on his motion to withdraw the guilty plea. The record shows that Smith's motion was filed along with a motion for appointment of counsel. A hearing was set on the motions, and on the date set for hearing, Smith's appointed counsel noted that Smith had filed a bar grievance against him. Smith notified the court that he had amended his motion to withdraw the guilty plea to allege ineffective assistance on the part of trial counsel. The hearing was rescheduled, and the trial court appointed another attorney to represent Smith. After Smith filed a bar grievance against this newly appointed attorney, however, that attorney moved on that ground to withdraw from representing Smith. That motion was

granted, and the hearing on Smith's motion to withdraw his plea was reset again to allow Smith to retain counsel or prepare to represent himself. After postponing the hearing once more at Smith's request, Smith's motion to withdraw the plea was finally heard, with Smith appearing pro se. Smith made no further requests for appointed counsel.

The trial court warned Smith from the very beginning that he was running a great risk by representing himself, and Smith disregarded the court's warnings. The trial court patiently extended to Smith an opportunity to obtain appointed representation at every stage. Smith, however, chose to represent himself and caused both appointed lawyers to withdraw by filing bar complaints against them.

In *Fortson v. State*, 272 Ga. 457 (532 SE2d 102) (2000), the Georgia Supreme Court recognized that a plea withdrawal proceeding is a "critical stage" of a criminal prosecution entitling the prisoner to counsel. Id. at 459. But that court has also recognized that "[t]he essential aim of the Sixth Amendment is to guarantee effective assistance of counsel, not to guarantee a defendant preferred counsel or counsel with whom a 'meaningful relationship' can be established." (Citations and punctuation omitted.) *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000). Even after Smith had tried the patience of all concerned by alternately rejecting and accepting appointed counsel throughout the pendency of these proceedings, the trial court appointed new counsel to represent him on his motion to withdraw the guilty plea. It is obvious from Smith's conduct that he rejected this attorney as well. We have no hesitation in finding that Smith knowingly and intelligently made a valid waiver of his right to counsel. See id.

4. In his final enumeration, Smith asserts that he was denied due process because of the inordinate delay in the appellate process. This enumeration has no merit.

> [T]he similarity of a defendant's interests in a speedy trial and a speedy appeal are such that the balancing test adopted for speedy trial violations in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), should be applied to situations in which a defendant claims that a delay in the appellate process is violative of due process of law. The four fact[or]s enunciated in *Barker v. Wingo*, supra at 530 are the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

(Punctuation omitted.) *Graham v. State*, 171 Ga. App. 242, 250 (7) (319 SE2d 484) (1984).[1]

In this case, although delay in the appellate process occurred and was somewhat lengthy, it was not attributable to the State. The delay between Smith's motion to withdraw his plea and the hearing on that motion was the result of Smith's rejection of his two appointed attorneys. Smith certainly asserted his right. But no prejudice resulted to Smith from the delay other than his post-conviction incarceration, which is not, in and of itself, a violation of his due process rights. *Graham*, supra, 171 Ga. App. at 251.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED JULY 26, 2005.

*Anthony O. Van Johnson*, for appellant.

*Gwendolyn R. Keyes, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.

---

[1] A subsequent appeal in a companion case, *Jordan v. State*, 242 Ga. App. 408 (530 SE2d 42) (2000), overruled *Graham* in part on other grounds sub nom., *Shields v. State*, 276 Ga. 669, 671, n. 13 (581 SE2d 536) (2003).