## A10A1652. WARE v. THE STATE.
### (706 SE2d 143)

PHIPPS, Presiding Judge.

Darryl Ware, represented by appointed counsel, was tried by a jury and convicted of the robbery of a bank teller. Thereafter, he was appointed new counsel and pursued a motion for new trial, which was denied. On appeal, Ware contends that the trial court erred by rejecting his pretrial requests to replace his trial counsel and by rejecting, on motion for new trial, his claim of ineffective assistance of trial counsel. Because Ware has shown no reversible error, we affirm.

The trial evidence showed that at about noon on May 5, 2007, a person wearing no facial mask or hat entered a branch of the Bank of America and handed a teller a threatening note demanding money. The teller put cash into an envelope and handed it to the robber, who then left the branch. The bank's surveillance cameras recorded the incident, including images of the robber's face.

Moments later, police arrived at the scene. The robbed teller, together with the teller who had been working adjacent to her, provided an officer with a description of the robber, including race, gender, age, build, and facial shape. Also reported to the officer was that the robber's head was bald. Soon thereafter, the police obtained from the bank video footage and still photographs depicting the robbery and used images therefrom to issue a be-on-the-look-out bulletin for the robber.

A police detective assigned to the case uncovered information that led to Ware becoming a suspect. Thus, the detective obtained photographs of Ware taken during 2004 and 2006, noting that the 2004 photo showed an indentation on Ware's head similar to an indentation depicted on the photographs of the robber's bald head. Thereafter, on May 14, 2007, the detective showed to the two tellers a photographic lineup that included Ware's 2006 photo; both tellers selected Ware's photo as that of the robber, and Ware was arrested for the crime.

At trial, the robbed teller again identified Ware as the perpetrator. The jurors were also shown surveillance footage of the robbery captured by the camera just above and behind the robbed teller. And they were shown still photographs of the robber's face, taken while

he stood at the teller's counter grabbing the money envelope. Ware neither testified, nor called any witness.

1. We turn first to Ware's contention that the trial court erred by rejecting his claim of ineffective assistance of trial counsel.

> To prevail on such claim, a defendant must establish, pursuant to *Strickland v. Washington*,[1] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. A court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one. Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[2]

(a) Ware complains that his trial lawyer did not ask prospective jurors during voir dire: (i) whether they owned any Bank of America stock; (ii) whether they had accounts at Bank of America; and (iii) whether they were patrons of the particular branch of Bank of America robbed. However, Ware makes no assertion as to what answer(s) any prospective juror would have given, had he or she been asked any of those questions; nor does Ware make any assertion as to what significance any such answer would have had. And because, further, "[t]he record also does not show that any other prospective jurors were erroneously qualified or disqualified because of any actions that trial counsel took or failed to take," no prejudice can be assigned to this alleged error by trial counsel.[3]

(b) Ware asserts that his trial lawyer failed to adequately investigate his case. In particular, Ware claims that his lawyer did not fully investigate the crime scene, did not request funds for a private investigator to assist him in the investigation, did not investigate his alibi defense, did not interview defense witnesses, did not secure the presence of defense witnesses, did not investigate his (Ware's) mental disability, and did not request funds for an identification expert to testify at trial about the unreliability of eyewitness

---

[1] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[2] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnote omitted).

[3] *Franks v. State*, 278 Ga. 246, 259 (2) (B) (4) (599 SE2d 134) (2004); see *Rickman v. State*, 277 Ga. 277, 280-281 (3) (587 SE2d 596) (2003).

784

identification. However, "[Ware] cannot show prejudice with regard to his assertions that counsel failed to fully investigate the case and call essential witnesses because he made no proffer as to what a thorough investigation would have uncovered or what the essential witnesses would have said."[4]

(c) Ware complains that his trial lawyer did not seek a mistrial when the prosecutor elicited on direct examination the following testimony from the police detective who investigated the case and procured the photographic lineup:

Q: Let me ask you this: You noted that you saw some type of indentation [on the head of the robber] on the bank photograph and on a photograph [of Ware] that you mentioned earlier. Did you notice the indentation from the person that was arrested?
A: Yes, I did.

Ware relies upon *Grimes v. State*,[5] which reversed the appellant's four robbery convictions because trial counsel had provided ineffective assistance by failing to object to witness testimony identifying the appellant as the man depicted in the photographs derived from the bank security videotapes.[6] At least some of those photographs had been included in an FBI bulletin.[7] And at trial, a detective who had investigated the case testified that "when I came in contact with [the appellant], having already seen the FBI bulletin, it was apparent that this was the individual from those cases."[8] Also, an accomplice in one of the robberies, who had pled guilty to that crime,[9] testified, after examining photographs derived from bank surveillance videos of perpetrators of the other three robberies, that "there's no doubt in my mind that that is [the appellant]."[10] This court agreed with the appellant that trial counsel should have objected to the two witnesses' identification testimony under the general rule that it is "improper to allow a witness to testify as to the identity of a person in a video or photograph when such opinion evidence tends only to

---

[4] *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003) (citation omitted); see *Pringle v. State*, 281 Ga. App. 235, 238-239 (2) (a) (635 SE2d 839) (2006) (absent proffer of what the testimony of an expert would have been at trial, defendant cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel hired an expert).

[5] 291 Ga. App. 585 (662 SE2d 346) (2008).

[6] See id. at 589 (2).

[7] Id. at 590 (2), n. 8.

[8] Id. at 590 (2) (punctuation omitted).

[9] Id. at 587.

[10] Id. at 590 (2) (punctuation omitted).

establish a fact which average jurors could decide thinking for themselves and drawing their own conclusions.''[11]

According to Ware, the cited testimony by the detective in this case, "though not as blatant, was still just as prejudicial" as that in *Grimes*. Given the evidence in the instant case, however, we cannot agree. The jury was presented evidence that, nine days after the robbery, both the robbed teller and the teller who had been working adjacent to her identified from a photographic lineup Ware's photo as that of the man who had committed the crime. Furthermore, in this case, the robbed teller made an in-court identification of Ware as the perpetrator. In addition, jurors were shown video footage of the robber committing the crime, as well as still photographs of the robber's *face*; and the record confirms that Ware was present in the courtroom during his trial.[12] Under these circumstances, we conclude that Ware failed to demonstrate a reasonable probability that an objection or motion for mistrial related to the cited testimony by the detective would have changed the outcome of his trial.[13]

2. Ware contends that the trial court erred in denying his pretrial requests for replacement of appointed counsel. He further cites as error the trial court's denial of his requests without first conducting a hearing. Ware has failed to demonstrate any reversible error.

The record shows that before trial, Ware wrote letters to the trial judge stating his dissatisfaction with his lawyer, who Ware claimed was "not doing anything with [his] case." Ware specified that his lawyer: (i) had not visited him during his seven months in jail; (ii) had not provided him with a copy of his discovery package and transcripts of preliminary court hearings, although he had requested these items two months earlier; and (iii) would not accept any of his collect calls, forcing him to make calls to his lawyer only by using a three-way telephone option. In addition, Ware named another lawyer that he wanted to represent him. The trial court issued an order summarily denying Ware's request.

Ware wrote the trial judge another letter, pointing out that the court's order provided no reason for denying his request for the appointment of his preferred counsel and asking the judge to reconsider the request. Ware wrote that his lawyer still was not

---

[11] Id. (punctuation and footnote omitted).

[12] Cf. *Grimes*, supra at 592-593 (2) (apart from inadmissible identification testimony, evidence that defendant was man depicted in robbery photographs was not strong, where, among other things, one such identification witness was significantly impeached, no victim made an in-court identification of defendant, and an eyewitness to one of the robberies testified that "it doesn't look like [the defendant] . . . the build was not like that").

[13] *Strickland*, supra.

keeping him informed about his case, had not tried to obtain "exculpatory and/or witness impeaching transcripts from preliminary hearings," and had not interviewed him in seven months. Ware asserted that, given his lawyer's lack of effort, he was not being zealously represented. The trial court again issued an order summarily denying Ware's request.

(a) Ware has failed to show that refusing to appoint his preferred counsel to represent him was an abuse of discretion by the trial court.

> An indigent defendant has no right to compel the trial court to appoint an attorney of his own choosing. The choice of appointed counsel is a matter governed by the trial court's sound exercise of discretion and will not be disturbed on appeal unless [that discretion is] abused. However, when a defendant's choice of counsel is supported by *objective considerations favoring the appointment of the preferred counsel*, and there are no countervailing considerations of comparable weight, it is an abuse of discretion to deny the defendant's request to appoint the counsel of his preference.[14]

Nothing in Ware's letters provided any objective considerations favoring the appointment of his preferred counsel. And when Ware was asked at the hearing on motion for new trial why he had preferred in particular the lawyer named in his letters, Ware responded only that "I know [he] is a drug attorney, but I also know he's a good attorney, too." Thereupon, Ware was pressed, "Was this from personal prior experience of friends maybe?" Ware answered, "Just from people that I have met through jail." He gave no additional testimony regarding his choice of appointed counsel. Ware's scant testimony fell short of providing objective considerations favoring the appointment of his preferred counsel.[15]

---

[14] *Davis v. State*, 261 Ga. 221, 222 (403 SE2d 800) (1991) (citations omitted; emphasis supplied); see *Chapel v. State*, 264 Ga. 267, 268 (2) (443 SE2d 271) (1994).

[15] Compare, e.g., *Chapel*, supra at 268 (3) (a) (noting that the appellant cited the following objective considerations: the preferred lawyer had represented appellant as retained counsel for about five months before being appointed, during which time he "pursued an aggressive motions practice"; during his representation of appellant, both as retained and appointed counsel, lawyer and client had developed a relationship of trust and confidence essential to effective criminal representation; a death penalty case requires special skill and knowledge and the preferred lawyer was one of only nine attorneys in the county both qualified and willing to accept appointed death penalty cases; and the preferred lawyer had "foregone further lucrative employment with [the county] in order to defend the accused"); *Davis*, supra (defendant's choice of two attorneys was supported by several weighty considerations, including that the attorneys were already familiar with the legally and factually complex case and the two

(b) In complaining that the trial court denied his requests without first conducting a hearing, Ware cites *Heard v. State*[16] for this proposition:

> When . . . the issue of the effectiveness of appointed counsel is raised, it would appear that the trial court, in order to insure that the defendant's Sixth Amendment right has been and will continue to be afforded, should conduct a hearing as to the basis of the defendant's motion for appointment of new counsel. An assertion of ineffectiveness is sufficient to invoke a ruling by the trial court, which ruling should be made after hearing from counsel. Thus, when the effectiveness of counsel is challenged, the Sixth Amendment requires more than a perfunctory, surface inquiry to determine the truth and scope of the allegations.[17]

But Ware disregards *Heard's* further instruction that a trial court's error in refusing to conduct a hearing "can be cured by a post-trial hearing before the judge in the trial court. If on the basis of evidence introduced at such hearing the trial judge concludes that appellant was afforded ineffective assistance of counsel, it must order a new trial."[18]

Ware's post-trial counsel raised the issue of ineffectiveness of trial counsel on motion for new trial. And, contrary to allegations in Ware's letters,[19] Ware's trial lawyer testified at the new trial hearing that he met with Ware several times at the jail and that they also often spoke by telephone. The lawyer recounted that, after receiving the discovery materials, "we [he and Ware] went over it line by line" at the jail. The lawyer testified that he and Ware had worked together in formulating a defense, including consideration of an alibi defense, but Ware did not want to testify and had no witness to support such a defense. In fact, the lawyer recalled, Ware had not presented him with a witness for any defense. The lawyer testified that he also had prepared and pursued pretrial motions.

Ware testified that his trial lawyer gave him the discovery

---

attorneys had a long-standing relationship with the defendant, who they contended was in a fragile state of mental health).

[16] 173 Ga. App. 543 (327 SE2d 767) (1985).

[17] Id. at 544-545 (1) (citations and punctuation omitted).

[18] Id. at 546 (1) (citation and punctuation omitted).

[19] To the extent the accounts of Ware and his trial lawyer differ, credibility determinations are within the province of the trial court, and we accept those determinations unless they are clearly erroneous. See generally *Espinosa*, supra.

materials the day of jury selection, which was the day before his trial started. Ware also testified that his alibi witness was his girlfriend, but that neither he nor his lawyer would have been able to get in touch with her because she "live[d] on the streets" and had no cell phone. When Ware was asked whether he had given his lawyer the name of any other potential witness, Ware answered, "I think I did," but named no one. Ware's sister testified at the new trial hearing that Ware and one of his brothers looked very much alike, but Ware conceded at the new trial hearing that he had not told his lawyer about that brother. Ware also acknowledged that his lawyer had accepted collect calls from him.

Here, the post-trial hearing cured any error by the trial court in refusing to conduct a pretrial hearing as to the basis of Ware's request for appointment of new counsel. The record reveals that Ware failed to demonstrate that he was deprived of effective assistance of counsel; consequently, no new trial is warranted.[20]

*Judgment affirmed. Miller, P. J., and McFadden, J., concur.*

DECIDED FEBRUARY 10, 2011.

*Wayne L. Burnaine*, for appellant.
*Daniel J. Porter, District Attorney, Wesley C. Ross, Assistant District Attorney*, for appellee.