## A11A0747. JONES v. THE STATE.

(713 SE2d 895)

MILLER, Presiding Judge.

Following a jury trial, Dan Jones was found guilty of aggravated stalking (OCGA § 16-5-91 (a)) and two counts of family violence battery (OCGA § 16-5-23.1). Jones filed a motion for a new trial, which the trial court granted as to the latter counts, but denied as to the aggravated stalking count. Jones appeals from the portion of the trial court's order denying his motion for a new trial, asserting that his trial counsel provided ineffective assistance by (a) failing to move for a directed verdict based on an alleged fatal variance between the indictment and trial evidence; (b) failing to move for a directed verdict based on insufficient evidence to support the aggravated stalking charge; and (c) failing to object to the trial court's jury charge on aggravated stalking. Concluding that Jones cannot establish ineffective assistance of counsel, however, we affirm.

Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984),

> [a] criminal defendant asserting an ineffective assistance of counsel claim bears the burden of showing (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense by creating a reasonable probability that but for counsel's errors, the outcome of the trial would have been different.

(Citations and footnotes omitted.) *Miller v. State*, 305 Ga. App. 620, 621 (2) (700 SE2d 617) (2010).

Viewing the evidence in the light most favorable to the verdict, see *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979), the record reflects that Jones and the victim were married in 2001 and were divorced in December 2008. The victim's testimony reflects a turbulent and abusive marriage. In October 2008, the victim and Jones were evicted from the trailer park where they lived; the victim communicated her intent to divorce Jones, and she moved in with her daughter. Because the victim's daughter did not allow Jones to live in her residence, Jones stayed in his vehicle after he and the victim were evicted from the trailer park.

The victim testified that on October 3, 2008, Jones took her purse and car from her daughter's residence in the middle of the night. The victim did not realize her purse and car were missing until the next morning, at which time she called the police. After this incident, the victim filed a petition for a good behavior bond in the magistrate court, alleging that Jones had threatened to kill her and

placed her in fear. The court issued a good behavior bond, which restrained Jones from having any contact with the victim.

Thereafter, on October 10, 2008, the victim called the police and reported that Jones was repeatedly calling and text messaging her in violation of the good behavior bond. On October 25, 2008, the victim left her daughter's residence and when she returned, she found that her clothes, television, DVD player, and blankets were missing. The victim assumed that the items had been taken by Jones. The victim called the police and left the residence again to check on her storage unit to ensure it had not been tampered with. Upon her return from the storage unit, she noticed Jones's blue pickup truck parked in the driveway of an empty trailer about three houses down from her daughter's residence. The victim testified that the truck appeared to be empty, so she approached it to obtain its tag information. As she approached the truck, however, the victim saw Jones coming from the direction of her daughter's residence. Jones walked past the victim while she was on the phone with 911, he got back into the truck, and he began driving the truck in reverse. Thereafter, however, Jones proceeded to get out of the truck, at which point the victim ran. Jones subsequently hit the victim in the back of her head, knocked her to the ground, got on top of her, and hit her in the face. The next day, on October 26, 2008, the victim answered a phone call from an unidentified number and was told "you're a dead bitch now." The victim called the police regarding the phone call.

On October 27, 2008 (the date specified in the relevant aggravated stalking count of the indictment), the victim testified that she received several text messages from Jones while she was at work; she testified that she called the police because the text messages violated Jones's good behavior bond. After the victim finished work for the day on October 27, 2008, she returned to her daughter's residence at approximately 3:00 p.m. The victim's daughter testified that "sometime that evening" she saw Jones at the residence. The victim's daughter saw Jones parked on the property in a blue pickup truck, watched him "spin out" in his truck, and heard him yell. The daughter called the police, who were dispatched to her residence. The responding officer testified that he arrived at the residence at approximately 9:50 p.m. and met with the victim and her daughter at that time. The daughter informed him of the existence of the good behavior bond and her observation of the above-described incident. Later that night, the responding officer was again dispatched to the daughter's residence in response to a call reporting Jones to be back at the residence. Jones had already fled the scene by the time the police arrived at the residence; he was nevertheless located and arrested later that night about a mile away from the daughter's residence. The victim later left and stayed at a friend's house that night.

Jones was indicted with four counts of aggravated stalking and two counts of family violence battery. At trial, Jones was represented by the public defender's office. As the trial began, the State withdrew one aggravated stalking count. At the close of the State's evidence, Jones's trial counsel moved for a directed verdict on two of the aggravated stalking counts; the trial court granted Jones's motion on one count and the State withdrew the other count. The remaining count of aggravated stalking and the two counts of family violence battery were submitted to the jury. The jury found him guilty on each count. Following his conviction and sentencing, Jones filed a timely pro se motion for new trial and communicated to the trial court that he wished to pursue a claim for ineffective assistance of trial counsel in his appeal. Per the trial court's order, Jones was appointed new counsel to represent Jones on appeal. Jones's new counsel filed an amended motion for new trial on April 2, 2010, in which he raised claims of ineffective assistance of trial counsel. The trial court entered an order granting Jones's motion for new trial as to the family violence battery counts (the State subsequently nolle prossed these charges), but denying it with respect to the aggravated stalking count.[1]

We note that the record reflects a motion for new trial hearing was scheduled for April 8, 2010. However, the trial court's order makes no reference as to whether such hearing took place, and no transcript of that hearing has been included in the record for our review. "Appellate consideration of the claim based only on the trial record would not, of course, include the testimony of trial counsel concerning counsel's actions at trial." *Wilson v. State*, 277 Ga. 195, 198 (586 SE2d 669) (2003).

(a) *Fatal Variance.* Jones argues that his trial counsel should have moved for a directed verdict on the ground that there was an alleged "fatal variance" between the indictment and the proof presented at trial. Based on our review of the record, however, Jones cannot show that his trial counsel's performance was deficient.

---

[1] We note that in denying Jones's motion for new trial, the trial court's order ruled only on the general ground that there was sufficient evidence to sustain Jones's conviction of aggravated stalking. The trial court did not make any additional findings, or otherwise consider, the numerous claims of ineffective assistance of counsel raised by Jones in his amended motion for new trial. Under these circumstances, this Court would generally remand the case for the trial court's determination of Jones's ineffective assistance of counsel claims. *Shelton v. State*, 307 Ga. App. 599, 601 (2) n. 5 (705 SE2d 699) (2011). Nevertheless, "[r]emand is not mandated if we can determine from the record that the defendant cannot establish ineffective assistance of counsel under the two-prong test set forth in *Strickland*." (Citation and punctuation omitted.) *Ruiz v. State*, 286 Ga. 146, 149 (2) (686 SE2d 253) (2009). As further detailed herein, the record in this case is sufficient for this Court to determine that Jones's ineffective assistance claims lack merit.

"The true inquiry regarding a fatal variance claim is whether there has been such a variance as to affect the substantial rights of the accused." *Holmes v. State*, 291 Ga. App. 196, 199 (2) (661 SE2d 603) (2008).

The indictment pertinently charged Jones with aggravated stalking in that "on October 27, 2008, . . . in violation of a good behavior warrant . . . , [he] did place [the victim] under surveillance at the residence [of her daughter] without the consent of [the victim] and for the purpose of harassing and intimidating [the victim] by going to [her daughter's residence]." Based on OCGA § 16-5-91 (a), as limited by the language of the indictment, Jones could be convicted for aggravated stalking upon the State's showing that Jones (1) violated a good behavior bond; (2) which prohibited following, placing under surveillance, or contacting the victim; (3) without the consent of the victim; and (4) for the purpose of harassing and intimidating the victim. See *Jagat v. State*, 240 Ga. App. 822, 822 (1) (525 SE2d 388) (1999).

Although the statute fails to provide a definition of the term "surveillance," the term is readily understood by people of ordinary intelligence as meaning a "close watch kept over someone or something." Merriam-Webster Online Dictionary (11th ed. 2008). Accordingly, the indictment put Jones on notice that driving to, parking at, and sitting outside the residence where the victim was staying constituted "surveillance" and that such conduct was a violation of the good behavior bond. Accord *Holmes*, supra, 291 Ga. App. at 198-199 (2) (concluding the indictment, which alleged that the aggravated stalking occurred on a specific date in violation of a family violence protective order, clearly put the defendant on notice that the alleged act of aggravated stalking was a violation of that order). "Thus, there is no basis whatsoever to believe that [Jones] was somehow misled or surprised as to the incident referred to in the indictment, that his ability to prepare for trial had been impeded, or that he could be tried again for the same offense." (Footnote omitted.) Id. at 199 (2).

Since there was no fatal variance between the indictment and the trial evidence, trial counsel's failure to move for a directed verdict on this ground was not deficient. "Failure to pursue a meritless motion does not amount to ineffective assistance." *Murray v. State*, 306 Ga. App. 106, 108 (701 SE2d 579) (2010).

(b) *Insufficient Evidence*. Jones argues that his trial counsel should have moved for a directed verdict on the grounds that there was insufficient evidence to support his aggravated stalking conviction. However, we again conclude that Jones cannot demonstrate that his counsel's performance was deficient.

Jones specifically contends that there is a lack of competent

evidence showing that (i) the victim was present at the time of the October 27, 2008, incident, (ii) the victim was ever "placed under surveillance" by Jones, or (iii) Jones violated the good behavior bond. We disagree. First, based upon the evidence showing that the victim was present to speak with the officer, who had arrived shortly after Jones fled the scene, the jury was authorized to infer that the victim had also been present at the time of the incident. Furthermore, the evidence that Jones drove to, parked at, and sat outside of the residence where the victim was staying was sufficient for the jury to reasonably infer that Jones's behavior constituted "surveillance" and contact of a nature that violated the good behavior bond.

Thus, viewing this evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to support the conviction of aggravated stalking as charged in the indictment. Consequently, trial counsel's failure to move for a directed verdict on the grounds of insufficient evidence was not deficient. See *McCoy v. State*, 278 Ga. App. 492, 494 (4) (a) (629 SE2d 493) (2006) ("The failure to raise a meritless motion for a directed verdict, as a matter of law, is not ineffective assistance of counsel.").

(c) *Jury Charge.* Jones contends that he received ineffective assistance of counsel because his trial counsel failed to object to the trial court's jury charge on aggravated stalking. We disagree.

"Trial counsel's failure to raise objections to the charge establishes no lack of effectiveness on his part absent some deficiency or impropriety in the charge which was harmful to [the defendant]." *Harris v. State*, 258 Ga. App. 669, 672 (2) (574 SE2d 871) (2002).

In accordance with Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.) § 2.24.55, the trial court instructed the jury that "a person commits the offense of aggravated stalking when such person, in violation of a good behavior bond, places under surveillance or contacts another person at or about a place or places without the consent of the other person for the purposes of harassing or intimidating the other person." Jones claims that trial counsel should have objected to the jury charge because it contained the term "contacts" (in addition to "places under surveillance"), whereas the relevant aggravated stalking count of the indictment charged only that Jones "place[d] [the victim] under surveillance."

Even if we assume that trial counsel was deficient in failing to object to the charge on the ground that it deviated from the indictment, Jones has shown no prejudice from the alleged error. Accord *Goldey v. State*, 289 Ga. App. 198, 201 (2) (f) (656 SE2d 549) (2008). Notably, we find it highly improbable that the absence of an objection to the charge contributed to the jury's verdict. Id. at 202 (2) (f). Here, the trial court twice read the allegations of the indictment to the jury, twice reminded the jury that they would have the

indictment with them during their deliberations, and instructed the jury that the burden rests with the State to prove every material allegation of the indictment. The charge as given was not likely to mislead the jury into believing it could convict Jones should they find the evidence supported a form of aggravated stalking not specified in the indictment, i.e., by "contacting" the victim on October 27, 2008. *Potts v. State*, 207 Ga. App. 863, 865 (1) (429 SE2d 526) (1993) ("A charge on a code section in its entirety is not error where a part thereof is applicable and it does not appear that the inapplicable part misled the jury or erroneously affected the verdict.") (citations and punctuation omitted); see also *Slack v. State*, 159 Ga. App. 185, 188 (2) (283 SE2d 64) (1981).

Accordingly, Jones cannot show that there is a reasonable probability that the outcome of the proceedings would have been different, but for his trial counsel's allegedly unprofessional error.

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED JULY 8, 2011.

*James A. Chamberlin, Jr.*, for appellant.

*Jacquelyn L. Johnson, District Attorney, Jonathan R. Miller III, Assistant District Attorney*, for appellee.

