**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**June 29, 2012**

# In the Court of Appeals of Georgia

A12A0174. BRYSON v. THE STATE.

MILLER, Judge.

Following a jury trial, Julius Bryson was convicted of two counts of armed robbery (OCGA § 16-8-41 (a)) and two counts of possession of a firearm during the commission of a felony (OCGA § 16-11-106 (b)). Bryson filed a motion for new trial, which the trial court denied. Bryson appeals, contending that (1) the evidence was insufficient to sustain his convictions. Bryson further contends that the trial court erred (2) in giving the "level of certainty" jury charge; (3) in admitting evidence that he was speeding and had no driver's license; (4) in failing to direct a verdict or give a lesser included jury charge on robbery by intimidation as to the second count of armed robbery; (5) in failing to direct a verdict of acquittal as to the second count of possession of a firearm; (6) in admitting witness opinion testimony identifying him

in a videotape; (7) in allowing the prosecutor to engage in an impermissibly suggestive in-court identification procedure; and (8) in allowing the prosecutor to engage in improper burden-shifting questioning at trial. In addition, Bryson argues that (9) his trial counsel provided ineffective assistance. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies. As an appellate court, we do not weigh the evidence, judge the credibility of witnesses[,] or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged. Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the jury's verdict will be upheld.

(Citation, punctuation, and footnotes omitted.) *Brinson v. State*, 245 Ga. App. 411, 412-413 (1) (537 SE2d 795) (2000).

So viewed, the evidence showed that on the afternoon of April 12, 2003, a custodian was working at a rest area on Interstate-75 in Turner County when she observed a white car occupied by three black males back into a parking space at the

rest area. One of the males was wearing a black bandana on his head; another wore a hood. The custodian testified that she was able to see the males' faces at that time.

On that same afternoon, the first victim stopped at the rest area and went into the mens' restroom. Upon entering the restroom, the victim observed two black males standing at the sink. While using the urinal, the victim was approached from behind by one of the males, who demanded his wallet. The victim attempted to turn away, and was approached by the second male, who pulled out a gun and pointed it at the victim's chest. The victim saw the gun and heard the distinctive "click" sound of a bullet being engaged into the gun's chamber. The victim removed his wallet from his back pocket and handed it to the perpetrators. Upon discovering that the victim did not have any money in his wallet, the perpetrators shoved the wallet into the victim's chest and searched the victim's pockets.

While the armed robbery of the first victim was still in progress, a second victim entered the restroom. The perpetrators then turned to commit an armed robbery of the second victim. The second victim testified that the perpetrator approached him from behind, demanded his wallet, and said that the accomplice "has a gun and he'll kill you." The second victim gave the perpetrators his wallet and cash in the amount of $610.

The first victim rushed out of the restroom and told the custodian to call 911 to report the armed robbery incidents. The second victim, his wife, and the custodian observed the perpetrators flee from the rest area in the white car that had been backed into a parking space at the rest area. The second victim and his wife described that the white car had a cracked windshield. Both victims described that one of the perpetrators was tall and was wearing a hood and a black bandana. The second perpetrator who had brandished the gun was described as being shorter, young, and wearing a white jersey.

Local law enforcement officers received a "[b]e on the lookout" radio report with the descriptions of the white car and the perpetrators. Almost immediately after receiving the radio report, an officer observed the car, matching the descriptions and traveling at a high rate of speed on the interstate. The officer tracked the car's speed and reported that the car was going 102 miles per hour in a 65-mile per hour zone. The officer pursued the car, activating the blue lights and siren of his patrol car in efforts to initiate a stop. The perpetrators did not stop the car, and instead led the officer on high speed chase. Several other officers joined the chase, and eventually stopped the car by blowing out its tires. Bryson, who was the driver, then bailed from

4

the car and led the officers on a foot chase. Bryson was captured and taken into police custody.

Bryson's accomplices were also apprehended at the end of the chase. After the perpetrators were apprehended, the officers searched the car and recovered the second victim's driver's license, along with the clothing and bandana that the perpetrators had worn during the commission of the crimes. The officers also recovered the second victim's wallet from the side of the interstate. In addition, the officers recovered from Bryson's accomplice over $600, matching the approximate amount taken from the second victim.

During the course of their investigation, the officers compiled a photographic lineup. The custodian identified Bryson as being one of the perpetrators in the lineup. The custodian also made an in-court identification of Bryson at trial.

At the conclusion of the trial, the jury entered a verdict finding Bryson guilty of the charged offenses.

1. Bryson challenges the sufficiency of the evidence to sustain his convictions. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to establish Bryson's guilt as a party to the crimes.

"A person commits the offense of armed robbery when, with intent to commit theft, he . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). A person commits the offense of possession of a firearm during commission of a felony when he has on or within arm's reach of his person a firearm during an armed robbery. See OCGA § 16-11-106 (b). "Where a robbery is committed by the use of a firearm, separate convictions for armed robbery and possession of a firearm during the commission of a crime are specifically authorized by OCGA § 16-11-106 (e)." (Citations and punctuation omitted.) *Howze v. State*, 201 Ga. App. 96, 97 (410 SE2d 323) (1991). Bryson was charged as a party to these offenses pursuant to OCGA § 16-2-20. In accordance with OCGA § 16-2-20 (a), "[a]ny person concerned in the commission of a crime is a party to it and may be convicted as a principal." (Citations and punctuation omitted.) *Wilcox v. State*, 177 Ga. App. 596, 596-597 (340 SE2d 243) (1986).

> [W]here a party has committed armed robbery and possession of a firearm during commission of a felony, an accomplice who is concerned in the commission of those crimes under OCGA § 16-2-20 is likewise guilty of both offenses, notwithstanding the fact that the accomplice did not have actual possession of the firearm.

6

*Howze*, supra, 201 Ga. App. at 97; see also *Wilcox*, supra, 177 Ga. App. at 596-597.

Moreover,

> [w]hile mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.

(Citation and punctuation omitted.) *Olds v. State*, 293 Ga. App. 884, 886 (1) (668 SE2d 485) (2008).

Here, the trial evidence set forth above showed that Bryson either directly committed or was a party to the armed robberies of both victims at the rest area. The custodian who was present at the scene identified Bryson as one of the perpetrators who had participated in the crimes. Bryson's flight from the rest area, flight from the officers, act of driving the getaway car, and possession of the second victim's driver's license and clothing items that witnesses linked to the crimes presented additional circumstances from which the jury could infer his guilt as a party to the crimes. See *Woodruff v. State*, 233 Ga. 840, 842 (1) (213 SE2d 689) (1975) (ruling that "evidence of flight may be admitted as one of a series of circumstances from which guilt may be inferred") (citations and punctuation omitted); *Olds*, supra, 293 Ga. App. at 886-

7

887 (1) (concluding that the evidence was sufficient to convict the defendant as a party to the crime of armed robbery when he was caught driving the getaway vehicle, he matched the witnesses' description of the perpetrators, and the stolen items were found in his vehicle).

Bryson nevertheless argues that the armed robbery and firearm charges involving the second victim cannot be upheld since the second victim testified that he did not actually see a gun during the robbery. Contrary to Bryson's arguments, however,

> [c]ircumstantial evidence is sufficient to establish the use of a weapon or device appearing to be a weapon, and a conviction for armed robbery may be sustained even though the weapon or article used was neither seen nor accurately described by the victim. The victim need not see the weapon, so long as he or she had a reasonable apprehension that an offensive weapon was used.

(Punctuation and footnotes omitted.) *Marlin v. State*, 273 Ga. App. 856, 858 (2) (616 SE2d 176) (2005); see also *Smith v. State*, 274 Ga. App. 568, 570 (1) (a) (618 SE2d 182) (2005) (in determining a defendant's guilt of armed robbery, "[t]he question is whether the defendant's acts created a reasonable apprehension on the part of the

8

victim[] that an offensive weapon was being used, regardless of whether the victim[] actually saw the weapon") (citation and punctuation omitted).

The evidence shows that the armed robberies committed against the two victims overlapped and occurred nearly simultaneously. When the second victim entered the restroom, he observed the crimes against the first victim taking place. The perpetrators then immediately turned to commit the armed robbery of the second victim. The first victim saw the gun, which Bryson's accomplice had pointed to his chest. Although the second victim testified that he did not actually see the gun, the perpetrator told him that his accomplice "has a gun and he'll kill you." The second victim further testified that when he tried to look at the accomplice, the perpetrator was standing behind him and pushed him to obstruct his view. Based upon the totality of the circumstances and evidence, the jury was entitled to conclude that Bryson's accomplice possessed a gun during both armed robberies and that the second victim was in reasonable apprehension that there was a gun. See *Smith*, supra, 274 Ga. App. at 570 (1) (a); *Marlin*, supra, 273 Ga. App. at 858-859 (2) (affirming armed robbery conviction when the victim admittedly never saw a gun, but the defendant stated that "he had a gun and would shoot").

We likewise discern no merit in Bryson's argument that the evidence failed to exclude every other reasonable hypothesis save that of his guilt. See OCGA § 24-4-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). Under this principle,

> the question whether there is a reasonable hypothesis favorable to the accused is the jury's province. Questions as to reasonableness are generally to be decided by the jury which heard the evidence, and finds beyond a reasonable doubt that there is no reasonable hypothesis other than guilt. The appellate court will not disturb that finding, unless the verdict of guilty is insupportable as a matter of law. The appellate courts have no yardstick by which to ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of 12 jurors of rational mind. Moreover, in every case the jury is the arbiter of credibility including as to the defendant's explanation, and the jury is the body which resolves conflicting evidence, and where the jury has done so, the appellate court cannot merely substitute its judgment for that of the jury.

(Citations and punctuation omitted.) *McGuire v. State*, 204 Ga. App. 151 (2) (418 SE2d 464) (1992). Notwithstanding any evidentiary conflicts, this evidence was sufficient to authorize the jury's guilty verdict. See id. at 151-152 (2); see also *Olds*, supra, 293 Ga. App. at 886-887 (1).

10

2. Citing *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005), Bryson contends that the trial court erred in giving the "level of certainty" charge in instructing the jury on assessing the reliability of eyewitness identification.[1]

Notably, however, "the giving of such an instruction does not require reversal when there is other significant evidence corroborating the eyewitness identification." (Citation omitted.) *McKenzie v. State*, 284 Ga. 342, 345 (3) (a) (667 SE2d 43) (2008). Here, there was other evidence linking Bryson to the crimes, including his flight in the getaway car immediately following the crimes and evidence that the second victim's driver's license and clothing items that had been linked to the crimes were found in the getaway car that he had been driving. Moreover, the trial court further instructed the jury as to the State's burden of proof regarding Bryson's identity as the perpetrator beyond a reasonable doubt as well as other relevant considerations. Under these circumstances, the error in giving the "level of certainty" charge was harmless. See *McKenzie*, supra, 284 Ga. at 345 (3) (a) (giving the "level of certainty" charge

---

[1] We note that *Brodes*, supra, was decided in 2005, approximately two years after Bryson's trial. The *Brodes* ruling nevertheless applies since the instant case was in the "pipline" at the time of the ruling. See *Taylor v. State*, 262 Ga. 584, 586 (3) (422 SE2d 430) (1992) (adopting the "pipeline" approach, meaning that a new rule of criminal procedure will be applied to all pending cases then on direct review or not yet final).

was harmless since there was other evidence corroborating the identification, including the eyewitnesses' corroboration of the version of events and the defendant's flight and attempt to elude the authorities); *Willis v. State*, 309 Ga. App. 414, 421 (9) (a) (710 SE2d 616) (2011) (giving the "level of certainty" pattern instruction did not constitute reversible error since there was other evidence linking defendant to the robbery, including his possession of the victim's property).

3. Bryson also argues that the trial court erred in overruling his objections to evidence that he was speeding and had no driver's license. He contends that this evidence impermissibly placed his character in issue. Again, no reversible error has been shown.

"The State is entitled to present evidence of the entire res gestae of a crime[,] even if the defendant's character is incidentally placed in issue." (Citations and punctuation omitted.) *Bertholf v. State*, 298 Ga. App. 612, 616 (2) (680 SE2d 652) (2009). "Flight is always a circumstance which may be shown and a jury is authorized to take into account in determining guilt or innocence of an accused, and evidence thereof is not inadmissible because it incidentally puts the defendant's character in issue." (Citations omitted.) *Hogans v. State*, 251 Ga. 242 (1) (304 SE2d 699) (1983). Notably, Bryson himself relies upon the challenged evidence in support of his defense

12

theory that he fled from the officers to avoid traffic tickets, not because he was guilty of the charged offenses. Cf. *Hovis v. State*, 260 Ga. App. 278, 281-282 (1) (b) (582 SE2d 127) (2003) (failure to object to testimony that defendant did not have a driver's license was not erroneous since the testimony supported the defense theory and provided an alternative explanation for defendant's act of leaving the scene of the accident). His claims therefore afford no basis for reversal.

4. Bryson's remaining claims of trial court error pertain to matters that were not presented or objected to at trial. Specifically, although Bryson contends that the trial court erred in failing to grant directed verdicts on the armed robbery and possession of a firearm charges pertaining to the second victim, the record fails to show that trial counsel requested such relief at trial. Since Bryson made no motion for a directed verdict of acquittal, the trial court did not err by failing to direct a verdict sua sponte. See *McCord v. State*, 182 Ga. App. 586 (1) (356 SE2d 689) (1987).While Bryson further argues that the trial court erred in failing to give a jury charge on robbery by intimidation as a lesser included offense to armed robbery, he concedes that he did not request such a charge at trial. "Where the record does not disclose a request for a charge upon a particular lesser included offense, the failure to give such a charge sua sponte, is not error." (Citations omitted.) *Young v. State*, 191 Ga. App. 651, 654

13

(4) (382 SE2d 642) (1989); see also *Turner v. State*, 237 Ga. App. 642, 644 (2) (516 SE2d 343) (1999) ("A trial court's failure to charge on a lesser included offense is not error when no written request is made for the charge.") (citation omitted). Likewise, trial counsel failed to interpose contemporaneous objections to the allegedly improper testimony, evidence, and questioning that Bryson now seeks to challenge in this appeal. "[T]he contemporaneous objection rule . . . has long been a mainstay of Georgia trial practice. Under this rule one must object to evidence when it is actually offered, and the failure to object waives any objection which might have been raised." (Citations and punctuation omitted.) *Capps v. State*, 273 Ga. App. 696, 697 (1) (615 SE2d 821) (2005).

Nevertheless, since Bryson argues that his trial counsel was ineffective in failing to raise these issues, we shall review his contentions of error in the context of his ineffective assistance of counsel claims in Division 5 below.

5. Bryson contends that his trial counsel provided ineffective assistance in several respects.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the

14

outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (104 SC 2052, 80 LE2d 674) (1984). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. As the appellate court, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts [in a de novo review].

(Citations and punctuation omitted.) *Willis*, supra, 309 Ga. App. at 420 (9); see also *Smith v. State*, 282 Ga. 388 (651 SE2d 28) (2007). "Generally, matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel. And the mere fact that present counsel would have pursued a different strategy does not render trial counsel's strategy unreasonable." (Citations omitted.) *Smith*, supra, 282 Ga. at 392 (7). Bearing these principles in mind, we turn to address Bryson's claims.

(a) Bryson first claims that trial counsel erred in failing to move for a directed verdict on the armed robbery and firearm charges pertaining to the second victim.

"Our standard of review for the denial of a motion for a directed verdict of acquittal is the same as our standard for reviewing the sufficiency of the evidence to support a conviction. Where the evidence establishes the essential elements of the offense charged, a directed verdict of acquittal is unauthorized." (Citations and

15

punctuation omitted.) *Amaechi v. State*, 306 Ga. App. 333, 337 (2) (702 SE2d 680) (2010). As explained in Division 1 above, the evidence established Bryson's guilt as a party to both of the charged offenses committed against the second victim. Since a directed verdict was not authorized, trial counsel did not err in failing to present the meritless motion. See *Jones v. State*, 310 Ga. App. 705, 709 (b) (713 SE2d 895) (2011) ("The failure to raise a meritless motion for a directed verdict, as a matter of law, is not ineffective assistance of counsel.") (citation omitted).

(b) Nor do we find reversible error in trial counsel's failure to request a jury charge on robbery by intimidation as a lesser included charge to the armed robbery offense. It is true that robbery by intimidation is a lesser included offense of armed robbery. See OCGA § 16-8-41 (a). Nevertheless, "[w]here the uncontradicted evidence shows completion of the offense of armed robbery, and no evidence is presented to the effect that a weapon was not used in the robbery, the defendant is not entitled to a jury charge on the lesser included offense of robbery by intimidation." (Punctuation and footnote omitted.) *Brinson*, supra, 245 Ga. App. at 413 (2). As explained in Division 1 above, the evidence established that a gun was used during both armed robberies. Both armed robberies occurred almost simultaneously, and the first victim confirmed that he saw the gun. In addition, the perpetrator told the second

16

victim that his accomplice had a gun. Since the uncontradicted evidence shows the completed offense of armed robbery, no basis for reversal has been shown. See, e.g., id. at 413-414 (2).

(c) Bryson also argues that his trial counsel erred in failing to object to the officer's opinion testimony identifying him in a store security videotape.

During the course of their investigation, the officers obtained a store security videotape that allegedly depicted Bryson on the afternoon of the incident. The officer identified Bryson in the videotape, and described his actions as he entered the driver's side of the white car. We agree that the officer's testimony identifying Bryson as the person depicted in the videotape was erroneous.

> It . . . [is] improper to allow a witness to testify as to the identity of a person in a video or photograph when such opinion evidence tends only to establish a fact which average jurors could decide thinking for themselves and drawing their own conclusions. There was no evidence offered here that [Bryson's] appearance had changed by the time of trial or that he exhibited some characteristic that made [the officer] more likely to identify him correctly than the members of the jury.

(Punctuation and footnotes omitted.) *Mitchell v. State*, 283 Ga. App. 456, 458-459 (641 SE2d 674) (2007).

17

Bryson, however, has failed to show that he was prejudiced by this error. Significantly, Bryson's identification as one of the perpetrators did not rest upon the videotape identification. Rather, the evidence showed that the custodian, who had previously seen the perpetrator's faces, had identified Bryson in a pretrial photographic lineup and again during her testimony at trial. In addition, the officer who had chased and apprehended Bryson shortly after the armed robbery incidents made an in-court identification of Bryson. The getaway car that Bryson was driving contained the second victim's property and the clothing items linked to the crimes. "Under these circumstances, we conclude that [Bryson] failed to demonstrate a reasonable probability that an objection or motion for mistrial related to the cited testimony by the [officer] would have changed the outcome of his trial." (Punctuation and footnote omitted.) *Ware v. State*, 307 Ga. App. 782, 785 (1) (706 SE2d 143) (2011).

(d) Bryson contends that trial counsel erred in failing to object to the prosecutor's impermissibly suggestive identification procedure at trial.

During the prosecutor's examination, the custodian was asked whether she could identify the perpetrator who she had observed on the date of the incident. In response, the custodian pointed to Bryson in making her in-court identification. To

clarify that Bryson was the individual who the custodian had pointed to, the prosecutor held his hand over Bryson's head, asking, "Is that the one you're talking about?" The custodian responded affirmatively.

At the motion for new trial hearing, trial counsel agreed that the custodian had already made the in-court identification of Bryson by pointing to him at the defense table prior to the prosecutor's action. The record thus supports the State's assertion that the prosecutor made the hand gesture merely for the sake of clarifying that the custodian had identified Bryson. Moreover, the custodian had previously identified Bryson as one of the perpetrators in a pretrial photographic lineup, and Bryson has not challenged that pretrial identification. In light of the prior identifications, Bryson's claim of error regarding the subsequent identification procedure is unavailing. See, e.g., *Taylor v. State*, 282 Ga. App. 469, 472 (3) (b) (638 SE2d 869) (2006) (defendant's claim of an impermissibly suggestive identification was unavailing since the witness had independently identified defendant as the person he had seen at the crime scene); *Blunt v. State*, 275 Ga. App. 409, 411 (1) (d) (620 SE2d 572) (2005) (in light of other evidence identifying the defendant as the perpetrator, there was no reasonable likelihood that the trial's outcome would have been different if the challenged in-court identifications had been excluded).

(e) In addition, Bryson claims that trial counsel erred in failing to object to the prosecutor's allegedly burden-shifting questioning of the second victim. In this regard, Bryson complains that the prosecutor was allowed to improperly pose the following question:

> Q: Now, I understand that you did not see the man's face clearly, but I'll ask you as you look at [Bryson], is there anything about him that would keep [Bryson] from being the individual that robbed you that day?
>
> A: No, sir.

Bryson contends that this line of questioning shifted the burden upon him to prove that he was not the man who robbed the second victim and violated the presumption of innocence. We disagree.

Although the prosecutor's question was inartfully phrased, it essentially was an inquiry as to whether Bryson fit the physical description of the perpetrator who had committed the crime. The prosecutor's question did not shift the burden of proof or violate the presumption of innocence as alleged. Moreover, the trial court's instructions to the jury adequately explained the State's burden of proof and the presumption of innocence. The trial court also specifically instructed the jury that "the burden never shifts to the defendant to prove that it was not him nor to prove it was

20

some other person." Pretermitting the impropriety of the question, any error was harmless. Cf. *Dupont v. State*, 204 Ga. App. 262, 264 (3) (418 SE2d 803) (1992) (ruling that any error in the trial court's procedure was harmless since the trial court's jury instructions adequately explained the State's burden of proof and specifically informed the jury that defendant was not required to present any evidence). The trial court did not err in denying Bryson's motion for a new trial on these grounds.

*Judgment affirmed. Mikell, P. J., and Blackwell, J., concur.*