## A93A0783. DAVIS v. THE STATE.

(434 SE2d 752)

COOPER, Judge.

Appellant was convicted by a jury of rape and kidnapping. He appeals from his conviction and sentence and the denial of his motion for a new trial.

The victim testified that on the night of the attack, she went to

visit Bonnie Smith. When she arrived at Smith's house, appellant was also there, and Smith introduced appellant to the victim as her friend from North Carolina. For four or five hours, they talked, watched TV, drank a couple of beers and ate chips. During this time, two or three other men, one of whom was called Chris Moody, came in to visit briefly and then left. When the victim got up to leave a little after midnight, Smith asked her if she would give appellant a ride home, and the victim agreed to do so. Soon after she drove away from Smith's apartment, appellant pulled out a gun and told her to drive to the back of a nearby apartment complex, take off her clothes and get into the back seat. The victim truthfully told him she was having her period, but he said he did not care. Appellant then raped her. After appellant left the victim, she drove to the home of Ken Pasmore, another friend who lived nearby, where she called her husband to come get her and take her to the hospital.

The victim's husband testified that he received a phone call from his wife in which she hysterically related that she had been raped in the back seat of her car. He went to get her and then took her to the hospital. After leaving her in the emergency room, he parked the car and examined the back seat area. There he found two photographs — one of a man alone and one of the same man with a woman. The pictures had a crease in them, as if they had been in someone's pocket. When he showed the pictures to the victim, she "went berserk" and identified the man in the photographs as her assailant. The victim's husband then took her home and went to the police station where he reported the rape to Detective Kelly. The next day, the victim went in to make a formal statement. She also showed Detective Kelly exactly where the attack occurred, as he wanted to confirm that it was his jurisdiction.

Detective Kelly testified that he was able to elicit from Bonnie Smith that the suspect's name was "Kenneth" and that Kenneth had been involved in an altercation with a maintenance man at her apartments. Detective Kelly narrowed down the date of the altercation by contacting the maintenance department and was able to obtain a last name and address for Kenneth by checking the police report on that earlier incident. Detective Kelly then obtained arrest and search warrants and executed them, arresting appellant and seizing a pair of blood-stained underwear. After appellant was read his *Miranda* rights, he told Detective Kelly he was not with any woman on the night in question. Another officer testified that appellant subsequently stated that he did not commit the rape and could not have because he was at another location at the time. A GBI forensic serologist testified that the blood on the underwear was on the outer front crotch and was human blood, but that she could not type or identify it further. The doctor who treated the victim at the hospital also tes-

tified, stating that the victim's breath rate, heart rate and blood pressure were elevated, but that there were no physical manifestations of forcible intercourse. He also testified that, based on his emergency room experience, it was not unusual for there to be no physical signs of rape.

Appellant testified at trial that he had sex with the victim but that it had been consensual.

1. Appellant first argues that the trial court erred in denying his motion for new trial because his trial counsel was ineffective in several ways. For example, appellant points to his counsel's failure to file pre-trial discovery motions; failure to locate and interview Bonnie Smith, Ken Pasmore and Chris Moody; and failure to reserve exceptions to the trial court's jury charges. The trial court held an evidentiary hearing on the motion for new trial, at which appellant's trial counsel testified that he did not make any discovery motions because the State voluntarily gave him access to their case file and that he did not interview Smith, Pasmore and Moody because he did not have addresses for them. He also noted that he did not think the testimony of Smith and Pasmore would be helpful based on notes in the police file and the fact that Smith and Pasmore were listed as possible State witnesses. Trial counsel testified that the strategy of the defense was to show that the victim was unhappy in her marriage and had consensual sex with appellant but then said it was rape to avoid her husband's jealous rage. He stated that this defense was viable and had a good chance to succeed, but was undermined by appellant's denial that the blood-stained underwear was his and his denial that he had dropped the photographs in the victim's car — denials that were incredible and unnecessary given a defense based on consent. Trial counsel strongly advised appellant against these denials, but appellant insisted on pursuing this course against his counsel's advice. Trial counsel testified that the defense was further undermined by appellant's testimony that he did not understand why the victim was so upset, as it was "just a little sex." Appellant did not call Smith, Pasmore or Moody as witnesses at the hearing on the motion for new trial, and the trial court found that appellant's trial counsel was not ineffective.

To support his claim of ineffective assistance of trial counsel, "[t]he burden is on the defendant to show both that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense. [Cits.]" *Brown v. State*, 257 Ga. 277, 278 (2) (357 SE2d 590) (1987). "Effectiveness of counsel is determined by looking at the totality of circumstances, not at isolated trial errors. [Cit.] There is a strong presumption that representation has been effective. [Cit.] Errors in judgment and tactical errors do not establish ineffective assistance. [Cit.]" *Clarington v. State*, 178 Ga. App. 663,

666-667 (5) (344 SE2d 485) (1986). Moreover, "[i]n order to prove the defense has been prejudiced, defendant must show there is a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional deficiencies. [Cit.]" *Baggett v. State*, 257 Ga. 735 (1) (363 SE2d 257) (1988).

Looking at the totality of the circumstances, we agree with the trial court that trial counsel's performance was not deficient. Additionally, appellant was unable to show a reasonable probability that any of the alleged deficiencies on the part of his counsel affected the outcome of the proceedings. Failure to file pre-trial discovery motions is not prejudicial where access to the materials in question is otherwise obtained, see *Thompson v. State*, 203 Ga. App. 339 (2) (416 SE2d 755) (1992); and failure to reserve exceptions to the court's charge is not prejudicial where that charge is adequate and complete. See *Concepcion v. State*, 205 Ga. App. 138 (421 SE2d 554) (1992). With respect to interviewing Smith, Pasmore and Moody, there is nothing in the record to indicate that these individuals could be located. Although appellant argues that addresses were listed for Smith and Pasmore in the police report, evidence at trial indicated that both had moved from those addresses before the trial. Moreover, appellant's suggestion that Smith, Pasmore and Moody might say something that would help his case is pure speculation. Accordingly, the trial court did not err in finding that appellant was afforded effective assistance of counsel in this case.

2. Appellant next contends that his arrest and the search of his home were illegal because the arrest and search warrants were issued without probable cause. See OCGA § 17-5-30. We first note that appellant filed no motion to suppress any statements or evidence resulting from his arrest or the search of his home. Thus, we address this enumeration of error only for the purpose of determining whether trial counsel's failure to make such a motion rendered his assistance ineffective. The arrest and search warrants were based on an affidavit from Detective Kelly in which he described the attack and attacker, stated that the victim identified the man in the photographs as her attacker and explained that subsequent investigation revealed that the man in the photographs was appellant. This is more than sufficient to establish probable cause for the arrest and search warrants. Appellant points out that the victim did not identify the man in the photographs as her attacker in Detective Kelly's presence, and that Detective Kelly was relying on the statement of the victim's husband for the truth of the fact of that identification. The victim was there when her husband gave Detective Kelly the photographs the second time, however, and her formal statement to Detective Kelly confirmed everything her husband told Detective Kelly the previous day. Moreover, Bonnie Smith told Detective Kelly the victim left with "Ken-

neth," who had been involved in an altercation with a man from the maintenance department, and the maintenance department subsequently identified the man in the photograph as the one who had been involved in the altercation. Under these circumstances, we cannot conclude that it is reasonably probable that the trial court would have found a lack of probable cause if a motion to suppress had been filed. See *Baggett*, supra. Thus, defense counsel's failure to make a motion to suppress on the grounds that the warrants were issued without probable cause was neither deficient nor prejudicial and did not render his assistance ineffective.

3. In his third enumeration of error, appellant asserts that the trial court erred in admitting prejudicial character evidence over his objection. In Detective Kelly's narrative response to a question about how he obtained a last name for "Kenneth," he explained that after he asked Smith if she knew anything else about Kenneth, Smith told him that Kenneth had been involved in an altercation with a maintenance man and that Kenneth was arrested and told not to come back to the complex. Pretermitting consideration of whether this testimony was relevant to any question of identification at issue in the case, see *Hart v. State*, 174 Ga. App. 134, 135 (1) (329 SE2d 178) (1985), we conclude that Detective Kelly's brief passing reference to a prior arrest in the course of a narrative response "falls just short of putting the defendant's character in issue." *Ogles v. State*, 238 Ga. 716, 717 (235 SE2d 384) (1977); see also *Hall v. State*, 177 Ga. App. 464 (339 SE2d 658) (1986).

We do agree with appellant that, having allowed the officer's brief reference to the earlier arrest, the trial court abused its discretion in not allowing appellant to cross-examine the officer about the circumstances and disposition of that arrest. (Enumeration of Error 5.) However, viewing this error in the context of all the evidence presented at trial, we conclude that it was harmless. Although the State's case against appellant was not overwhelming, we agree with appellant's trial counsel that appellant's own testimony and the implausible positions he took, contrary to his counsel's advice, with respect to the photographs and underwear were the crux of the guilty verdict against him. Moreover, calling the jury's attention to the briefly referred to arrest by eliciting an explanation of the circumstances might have harmed appellant as much as it helped him.

4. Appellant next argues that he was deprived of a fair trial due to prosecutorial misconduct. Specifically, he contends that the prosecutor withheld materials which should have been disclosed. However, appellant's trial counsel testified at the hearing on the motion for new trial that he had access to the prosecution's complete case file, and appellant has made no showing that anything was withheld. Contrary to appellant's assertion, the State was not obligated to provide up-

dated addresses for potential witnesses it chose not to call at trial or to ferret out evidence it did not possess. See *Fletcher v. State*, 157 Ga. App. 707 (3) (278 SE2d 444) (1981).

In a related argument, appellant contends that the prosecutor's policy of discouraging pre-trial discovery motions rendered his trial counsel ineffective. Specifically, he points to his counsel's inability to rely on OCGA § 17-7-210 (c) to exclude appellant's statement to the second officer — that he did not commit the rape and could not have done so because he was somewhere else — because his counsel failed to make a timely pre-trial request for any statement made by appellant. This statement was inculpatory because it, like appellant's post-arrest statement to Kelly, was inconsistent with his consent-based defense at trial. Trial counsel's failure to have this testimony excluded does not change our conclusion that counsel was not ineffective, however, as this second post-arrest statement was substantially similar and cumulative to the first statement made to Detective Kelly. As it is highly unlikely that the jury's verdict would be influenced by whether appellant made one rather than two post-arrest statements which were inconsistent with his defense at trial, we cannot conclude that "there is a reasonable probability that the result of the proceedings would have been different but for counsel's" failure to challenge this testimony. See *Baggett*, supra.

Appellant also contends that the prosecutor engaged in improper closing argument by referring to appellant's failure to call corroborating witnesses. Such argument is not improper. See *Battle v. State*, 155 Ga. App. 541 (4) (271 SE2d 679) (1980).

5. Appellant argues that the trial court erred when, in response to a request from the jury for a clear definition of "kidnapping," "abduction" and "steal away," it failed to send out a copy of the entire charge. However, it is not error to limit a recharge to the question asked. *Davis v. State*, 184 Ga. App. 415 (3) (361 SE2d 547) (1987). Accordingly, this argument is without merit.

6. Lastly, appellant asserts the general grounds, arguing that the evidence was insufficient to support the verdict. Viewing the evidence in a light most favorable to the verdict, it was sufficient to enable the jury to find appellant guilty of rape and kidnapping beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. McMurray, P. J., and Beasley, P. J., concur.*

DECIDED JULY 15, 1993 —
RECONSIDERATION DENIED JULY 29, 1993 — 

*Alice C. Stewart*, for appellant.

*Lewis R. Slaton, District Attorney, Herman L. Sloan, Nancy A. Grace, Assistant District Attorneys*, for appellee.