A07A2101. STANFORD v. THE STATE.
(654 SE2d 173)

JOHNSON, Presiding Judge.

A jury found Edward Stanford III guilty of two counts of child molestation, one count of aggravated sexual battery, one count of aggravated child molestation, and one count of incest involving Stanford's stepdaughter and her boyfriend. Stanford appeals, alleging his trial counsel provided ineffective assistance of counsel, the trial court erred in permitting the state to introduce evidence showing the victims' sexual history of being naive and inexperienced, and the trial court erred in charging the jury that witnesses are presumed to speak the truth. We find no error and affirm Stanford's convictions.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of

---

[17] *Bonner v. Smith*, 226 Ga. App. 3, 4 (2) (485 SE2d 214) (1997).
[1] *Roberts v. State*, 232 Ga. App. 745 (503 SE2d 614) (1998).

the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that the two victims began dating, and Stanford would often chaperone them and drive them places. One weekend in September 2000, Stanford brought the two victims to his apartment and spoke to the victims about sex, asking each of them if they were ready. Both victims indicated they were not ready for sex, but when Stanford drove the victims home, he told them they were not leaving the car until they had sex. After the victims had their clothes off, Stanford directed the male victim how to touch the female victim. The victims had sexual intercourse in the back of the car while Stanford watched. When they were finished, Stanford put his finger in the female victim's vagina to see if her hymen had broken. Stanford indicated that the hymen had not broken and instructed the victims to have sex again. Stanford then took the male victim home.

Two days later, Stanford told the female victim she would die if her hymen was not broken. He took the female victim home and made her have sexual intercourse with him. According to the victim, she had not been allowed to attend sexual education classes and did not know if Stanford was telling her the truth about her hymen.

On two other occasions, Stanford watched the victims engage in sexual intercourse at his direction. Neither victim could remember exactly when or where these incidents took place. While Stanford did not touch the female victim on these occasions, he did touch the male victim. He instructed the male victim that he needed to stay inside the female victim longer, he put his hand on the male victim's lower back, and he pushed the male victim back inside the female victim.

In January 2001, the victims were at Stanford's apartment, and Stanford told them they could have sexual intercourse in his bedroom while he waited outside in the living room. When the female victim was in the shower, Stanford ordered her out of the shower and on the floor, so he could determine whether the male victim had ejaculated inside of her. Stanford inserted his finger into her vagina. He then placed his mouth on her vagina and licked her. Stanford, ultimately, inserted his penis into her vagina, all under the guise of having to get the male victim's sperm out of her. Stanford told the male victim what he had done to the female victim. He told both victims to "take this to [y]our grave" because he could get in a lot of trouble for it.

---

[2] *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[3] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

Eventually, the male victim told his mother about the incidents after she asked him why he was acting so strangely. The male victim's father was also told. The male victim's father called the female victim's grandmother, who then spoke to her. However, the female victim did not tell anyone until her older brother called and asked her if it was true. She then told her grandmother. The police were then contacted and an investigation conducted.

1. Stanford contends his trial counsel rendered ineffective assistance of counsel because he (a) failed to present the testimony of Dr. Clarice Bell that Stanford did not take the female victim to her for a pregnancy test, (b) failed to request in writing an accurate jury charge on witness credibility and impeachment and failed to reserve exceptions to the jury charge, (c) failed to obtain copies of Stanford's cell phone records, (d) failed to timely file a special demurrer requiring the state to allege a specific date in the indictment on which the alleged offenses occurred, and (e) failed to file a motion to dismiss the charges based on a denial of Stanford's right to a speedy trial. We find no merit to these contentions.

To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense.[4] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[5] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[6] We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result.[7]

(a) Stanford argues his trial counsel was ineffective because he failed to present Bell's testimony that Stanford did not take the female victim to the doctor for a pregnancy test. We disagree. The record shows that the female victim testified that Stanford took her to Bell for a pregnancy test. The male victim testified that Stanford called him and told him that he, Stanford, had taken the female victim to Bell for a pregnancy test. Trial counsel did not call Bell as a

---

[4] *Fults v. State*, 274 Ga. 82, 83-84 (2) (548 SE2d 315) (2001).

[5] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[6] *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999).

[7] *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

witness to refute these statements, but Bell testified at the motion for new trial hearing that Stanford did not bring the female victim to her for a pregnancy test.

According to trial counsel, he and his investigator tried to contact Bell, but were unable to speak with her personally. However, the investigator was able to speak with Bell's office and determined that there was nothing helpful to the defense in Bell's records. Trial counsel decided as a matter of trial strategy not to call Bell as a witness. Trial counsel testified that "whether [Stanford] took her to the doctor or not wasn't going to really attack [the] credibility" of the victims regarding the child molestation, sexual abuse and incest charges. Decisions regarding which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client.[8]

Furthermore, while Stanford argues that Bell's impeaching testimony would have changed the outcome of the trial, this contention is pure speculation. The jury could very well have disbelieved the pregnancy test portion of the victims' testimony and still rendered a guilty verdict on the charges. We cannot find the trial court clearly erroneous for denying Stanford's motion for a new trial on this ground.

(b) Stanford contends trial counsel was ineffective because he failed to request in writing a jury instruction that excluded a statement that witnesses are presumed to speak the truth unless impeached, and he failed to reserve exceptions to the jury charge. We find no merit to these arguments.

While Georgia appellate courts have disapproved the instruction that witnesses are presumed to speak the truth, we have not found the giving of this charge to constitute reversible error.[9] In addition, we have held that the failure to reserve exceptions to the court's charge is not prejudicial where that charge is adequate and complete.[10] Here, the trial court gave a full and complete charge on credibility and impeachment of witnesses. The court charged the jury that it must determine which witnesses it would believe. The court further charged the jury that it could consider a number of factors, including a witness's manner of testifying, their means and opportunity for knowing the facts to which they testify, and the probability or improbability of their testimony. The trial court did not clearly err in denying Stanford's motion for new trial on this ground.

---

[8] See *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (1999).

[9] See *Hyman v. State*, 272 Ga. 492, 495 (4) (531 SE2d 708) (2000); *Lawrence v. State*, 238 Ga. App. 102, 104 (2) (517 SE2d 822) (1999).

[10] See *Davis v. State*, 209 Ga. App. 755, 758 (1) (434 SE2d 752) (1993).

(c) Stanford argues his trial counsel was ineffective because he failed to obtain copies of Stanford's cell phone records. According to Stanford, these records would have shown that calls were made from Stanford's cell phone to the male victim's father, rebutting the father's testimony that Stanford would not talk to him during the time the father was trying to contact Stanford in California. However, Stanford admitted at trial that his co-workers would not allow him to speak with the male victim's father. And it was uncontradicted that individuals other than Stanford had access to and actually used Stanford's cell phone. Thus, the introduction of Stanford's cell phone records would not have impacted this trial since the records do not reflect the parties to the conversations. The trial court did not err in denying Stanford's motion for new trial on this ground.

(d) Stanford alleges his trial counsel was ineffective because he failed to file a special demurrer requiring the state to allege a specific date on which the alleged offenses occurred. However, since Stanford did not allege the defense of alibi, the specificity of dates would not have been helpful. The indictment gave a range of dates that properly advised Stanford of the charges and gave him the opportunity to prepare a defense to those charges. Trial counsel did not err in failing to request a special demurrer under these circumstances.

(e) Stanford contends his trial counsel was ineffective because he failed to file a motion to dismiss the charges due to a denial of the right to a speedy trial. We find no merit to this argument.

To prevail on a motion to dismiss based on a violation of a defendant's right to a speedy trial, the court must evaluate (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the defendant of his right to a speedy trial, and (4) prejudice to the defendant.[11] While the record here shows that the time between Stanford's arrest and his trial was approximately two years, much of that delay was due to Stanford, who had four different attorneys over the pendency of the case. These attorneys needed time to prepare. And, according to the state, Stanford actually withdrew his motion for a speedy trial three weeks after it was filed. Most importantly, Stanford failed to assert that he suffered any prejudice because of the alleged delay. This fourth factor is "weighed most heavily in determining whether the constitutional right to a speedy trial has been violated."[12] Even if trial counsel had filed a motion to dismiss, the motion would have been denied since Stanford failed to satisfy the requirements for dismissal. Thus, trial counsel was not deficient for

[11] See *Johnson v. State*, 268 Ga. 416, 417 (2) (490 SE2d 91) (1997).
[12] (Punctuation omitted.) *McKinney v. State*, 250 Ga. App. 22, 23 (549 SE2d 164) (2001).

failing to make a meritless motion, and the trial court did not clearly err in denying Stanford's motion for new trial on this ground.

2. Stanford asserts the trial court erred by permitting the state to introduce evidence of the female victim's sexual history of being naive and inexperienced. However, whether to admit or exclude evidence lies within the sound discretion of the trial court, and that discretion will not be overturned absent manifest abuse.[13] We find no such abuse here.

While evidence of a victim's past sexual history is not usually admissible,[14] such evidence may be admissible if shown to be relevant.[15] The fact that evidence may be inadmissible for one purpose does not warrant its exclusion when it is relevant for another purpose.[16] Here, contrary to Stanford's assertion, the fact that the victims were naive and inexperienced was relevant and part of the actual crime.

In this case, the victims' naivete and lack of sexual experience or education explains why Stanford was able to abuse the victims the way he did. The victims' testimony as to statements made to them by Stanford and actions committed upon them could only have been explained by the lack of sexual experience and knowledge on the part of the victims.[17] We find no manifest abuse of discretion in the trial court's admission of this evidence for the limited purpose of showing Stanford's "superiority of knowledge" and the victims' "naivete [and] lack of familiarity with things sexual."

3. Stanford alleges the trial court erred in charging the jury that witnesses are presumed to speak the truth. However, as discussed in Division 1 (b), above, the giving of this charge did not constitute reversible error.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

---

[13] *Houston v. State*, 242 Ga. App. 114, 116 (2) (527 SE2d 619) (2000).

[14] See OCGA § 24-2-3.

[15] See *Burris v. State*, 204 Ga. App. 806, 809-810 (2) (420 SE2d 582) (1992).

[16] See id. at 810.

[17] "Well, [Stanford] was saying, 'Let me check to see if your hymen broke.' " He then put his finger in the female victim's vagina to check.

Stanford said, "Let me see if he — [the male victim] — 'nutted' in you." Then, he told the female victim he could get the sperm out, and he licked her vagina and stuck his penis in her to get out the male victim's sperm.

"[H]e told me — he said, if I don't get my hymen broke, I would die."

"Ed was saying that [the female victim] was ready to have sex."

"I thought I was going to get in trouble for showing [the condom]" to the female victim.

"And, you know, I didn't know where her hole was, vagina hole, so he was showing me where it was. . . . [H]e was telling me, like, where to rub to get her moist and stuff. And I didn't — like I didn't know what was going on. So he had a flashlight and [was] showing me, like, where the cherry [was] at."

DECIDED OCTOBER 29, 2007 —
RECONSIDERATION DENIED NOVEMBER 19, 2007 — 

*Lenzer & Lenzer, Thomas P. Lenzer, Robert W. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, Tracie H. Cason, Assistant District Attorney*, for appellee.