**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**October 16, 2012**

# In the Court of Appeals of Georgia

A12A1254. CHALK v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Michael Chalk was convicted of child molestation (OCGA § 16-6-4 (a) (1)) and public indecency (OCGA § 16-6-8 (a) (2)). Chalk filed a motion for new trial, which the trial court denied. Chalk appeals, contending that his trial counsel was ineffective, and that the unreasonable delay in preparation of the transcript was a violation of his due process rights. We discern no error and affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.

(Citations and punctuation omitted.) *Damerow v. State*, 310 Ga. App. 530, 531 (714 SE2d 82) (2011).

So viewed, the evidence shows that in September 2005, P. B., who was then nine years old, was riding her scooter by Chalk's house when she heard a tapping noise. When P. B. looked in the direction of Chalk's house, she saw him standing naked and masturbating in front of the window. P. B. ran home to tell her mother.

Several weeks later, on October 7, 2005, P. B.'s five-year old brother, D. B., was walking home from school when Chalk called out, "Hey, little boy." D. B. looked over in the direction of Chalk's house. D. B. saw the front door open to Chalk's house and observed Chalk naked on the floor and masturbating. D. B. ran home to tell his mother, and the mother later reported the incident to the police.

That same afternoon, another victim, who was then 20-years old, was visiting Chalk's neighbor. The victim heard someone whistling and thought her friend was trying to get her attention. The victim looked around and saw Chalk standing naked in front of his window and masturbating. The victim ran inside the house to tell her friend about the incident. The two women looked out the window and saw a naked Chalk wiping the inside of his window with a towel. The police were later notified.

Chalk was subsequently arrested, charged, and convicted of two counts of child molestation and one count of public indecency.

1. Chalk contends that his trial counsel was ineffective in several respects.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [See] *Strickland v. Washington*, 466 U. S. 668, 687 [104 SC 2052, 80 LE2d 674] (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation omitted.) *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010). Applying these standards, we turn to address Chalk's claims.

(a) Chalk contends that the evidence showed that the date alleged in Count 2 was erroneous, and that trial counsel was ineffective by failing to file a special demurrer to challenge the erroneous date alleged. We disagree.

3

Since "a defendant can be re-indicted after the grant of a special demurrer, a failure to file such a demurrer generally will not support a finding of ineffective assistance of counsel." (Citations and punctuation omitted.) *Lewis v. State*, 304 Ga. App. 831, 837 (5) (698 SE2d 365) (2010). "To succeed on his ineffective assistance claim, [Chalk] was required to show that his trial counsel's failure to specially demur materially impacted his ability to present a defense, thereby creating a reasonable probability that counsel's deficiency changed the outcome of the case." (Citation and punctuation omitted.) Id.

Here, Count 2 of the indictment charged that the offense of child molestation against P. B. occurred "on or about October 7, 2005," and did not specifically allege that the date of the offense was material. For this reason, the date alleged was not a material element to be proven with specificity by the State. See *Robbins v. State*, 290 Ga. App. 323, 329 (4) (a), n.17 (659 SE2d 628) (2008). At the motion for new trial hearing, trial counsel testified that the State would present evidence at trial that the offense against P. B. occurred either two weeks or two months prior to October 7, 2005. Trial counsel confirmed that he did not ask Chalk about a defense to challenge P. B.'s trial testimony that the offense occurred in September 2005. Although Chalk asserts that he had an "alibi-type defense" for the offenses that occurred on October

4

7, 2005, he did not proffer any evidence showing that he had a possible defense for the offense against P. B. that transpired in September 2005. Consequently, Chalk has failed to demonstrate that he was surprised or unable to present a defense due to the wrong date in the indictment; therefore, his claim of ineffective assistance of counsel on this ground affords no basis for reversal. See *Lewis*, supra, 304 Ga. App. at 837-838 (5).

(b) Chalk next contends that his trial counsel was deficient by failing to depose his father, a "potential alibi-type" witness who died prior to trial. We disagree.

At Chalk's trial, Chalk's mother testified that prior to his death from cancer in November 2007, Chalk's father, Jay Chalk, was interviewed by police officers regarding Chalk's activities on October 7, 2005. According to Chalk's mother, Jay Chalk had told police officers that he and Chalk were at home together on October 7, 2005, and that the two watched a movie that started at approximately 2:30 p.m.[1] Chalk testified that the movie he and his father watched together ended at approximately 4:30 p.m., and that his father soon left for work afterwards.

---

[1] The testimony of Chalk's mother was admitted under the necessity exception to the hearsay rule. See OCGA § 24-3-1 (b); *Jennings v. State*, 288 Ga. 120, 121-122 (3) (702 SE2d 151) (2010).

5

At the motion for new trial hearing, trial counsel testified that he was made aware in the summer of 2007 that Jay Chalk had been diagnosed with cancer. Jay Chalk's illness progressed quickly, as he became verbally unresponsive and was admitted to the hospital in September 2007 before passing away in November 2007. Although trial counsel had always intended to call Jay Chalk as a trial witness, trial counsel stated that he elected not to depose Jay Chalk based on trial strategy. Trial counsel explained that given Jay Chalk's condition, he believed he could not adequately prepare Jay Chalk for a deposition, and that he did not want to give the State the opportunity to cross-examine Jay Chalk since portions of his testimony would not be beneficial to the defense. Counsel's decision not to depose Jay Chalk under the circumstances was a reasonable strategy and did not constitute ineffective assistance of counsel. Cf. *Polite v. State*, 273 Ga. App. 235, 240 (5) (614 SE2d 849) (2005) (trial counsel was not ineffective for deciding not to call a potential witness who would have revealed unfavorable information about the defendant).

(c) Chalk also contends that his trial counsel was ineffective for failing to move to dismiss the indictment based on the State's violation of his Sixth Amendment right to a speedy trial. We disagree.

6

To prevail on a claim of ineffective assistance of counsel for failing to file a motion to dismiss on speedy trial grounds, Chalk must show that the motion would have been granted had it been filed. See *Stanford v. State*, 288 Ga. App. 463, 467 (1) (e) (654 SE2d 173) (2007). When considering a motion to dismiss on speedy trial grounds, the trial court must conduct a two-part test as set forth in the United States Supreme Court decisions in *Barker v. Wingo*, 407 U. S. 514, 530 (92 SC 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U. S. 647, 651-652 (112 SC 2686, 120 LE2d 520) (1992). See *Stewart v. State*, 310 Ga. App. 551, 552-553 (713 SE2d 708) (2011). First, the trial court must determine whether the interval from the defendant's arrest, indictment, or other formal accusation to trial is sufficiently long to be considered "presumptively prejudicial." (Citations omitted.) *Stewart*, supra, 310 Ga. App. at 552. If the delay is presumptively prejudicial, the trial court must determine whether the defendant has been deprived of his right to a speedy trial by analyzing a four-part balancing test that considers (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the defendant of his right to a speedy trial, and (4) prejudice to the defendant. *Stewart*, 310 Ga. App. at 553; see also *Stanford*, supra, 288 Ga. App. at 467 (1) (e).

7

(i) *Presumptive prejudice.* "Speedy trial rights attach at the time of arrest or formal indictment, whichever is earlier." (Citation and punctuation omitted.) *Stewart*, supra, 310 Ga. App. at 553 (1). Here, Chalk was arrested in October 2005, and went to trial in October 2008. The three-year delay was presumptively prejudicial. See *Ditman v. State*, 301 Ga. App. 187, 189-190 (1) (687 SE2d 155) (2009) (a pretrial delay exceeding 12 months is presumptively prejudicial).

(ii) *Length of the delay.* The 36-month pretrial delay in this case was uncommonly long, and is a factor weighed against the State. See *Ditman*, supra, 301 Ga. App. at 190 (2) (a).

(iii) *Reasons for the delay.* The record reveals that the delay from Chalk's arrest in October 2005 to his indictment in February 2007 – a period of 16 months – was caused the State's delay in performing DNA tests on various pieces of evidence. As for the remaining 20 months of delay, the case first appeared on the trial calender in May 2007, but a continuance was granted at Chalk's request. The record does not show when the case appeared on the trial calender after May 2007. At the motion for new trial hearing, trial counsel stated that he had asked for several continuances for various reasons. Trial counsel also indicated that the State had requested one continuance, and that there were times when the case appeared on the trial calender

8

but was not reached. "[W]hen there is no apparent reason for a delay, we must treat the delay as caused by the negligence of the State in bringing the case to trial." (Punctuation and footnote omitted.) *Johnson v. State*, 313 Ga. App. 895, 901 (2) (b) (723 SE2d 100) (2011). Since the State was responsible for the 16-month delay leading up to the indictment, and Chalk contributed to the remaining 20-month delay based on his many motions for continuances, we conclude that the State and Chalk were both responsible for the pre-trial delay. Where both parties are to blame for the delay, the second *Barker-Doggett* factor remains neutral. See *Robinson v. State*, 287 Ga. 265, 267-268 (1) (b) (695 SE2d 201) (2010).

(iii) *Assertion of the right*. Trial counsel testified that while Chalk was anxious about the length of the delay, Chalk never requested a speedy trial and did not object to the continuances requested by trial counsel. Chalk's failure to assert a speedy trial claim is weighed against him. See *Nealy v. State*, 246 Ga. App. 752, 754 (3) (542 SE2d 521) (2000) (holding that defendant's delay in asserting speedy trial claim was weighed against him).

(iv) *Prejudice to Chalk's defense*. Chalk asserts that he was prejudiced by the delay since his father was no longer available to testify at his trial. However, as discussed above in Division (1) (b), Jay Chalk's statements that were favorable to the

defense were introduced into evidence through Chalk's mother's testimony, and Chalk provided no further details about his father's anticipated testimony or how that testimony would have been favorable to Chalk. See *State v. Porter*, 288 Ga. 524, 530 (2) (c) (4) (705 SE2d 636) (2011); *Christian v. State*, 281 Ga. 474, 478 (2) (640 SE2d 21) (2007). Moreover, trial counsel testified that he believed the longer the delay, the more it damaged the State's case, and the more it benefited Chalk's defense. See *Jenkins v. State*, 282 Ga. App. 55, 56 (637 SE2d 785) (2006) (noting that pre-trial delay often works to a defendant's advantage).

Balancing the pertinent *Barker-Doggett* factors, Chalk has failed to establish that the 36-month delay violated his constitutional right to a speedy trial. Therefore, even if trial counsel was deficient for failing to raise the speedy trial claim, Chalk cannot demonstrate that this failure prejudiced his defense, and his ineffective assistance claim on this ground fails. See *Nealy*, supra, 246 Ga. App. at 755 (3).

2. Chalk contends that the unreasonable delay in the preparation of the transcripts violated his due process rights. There is no merit in his contention.

> The similarity of a defendant's interests in a speedy trial and a speedy appeal are such that the balancing test adopted for speedy trial violations in *Barker v. Wingo*, 407 U. S. 514 [92 SC 2182, 33 LE2d 101] (1972), should be applied to situations in which a defendant claims that a delay in the appellate process is violative of due process of law. The four

factors enunciated in *Barker v. Wingo* . . . are the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

(Punctuation, citation, and footnote omitted.) *Smith v. State*, 274 Ga. App. 568, 572 (4) (618 SE2d 182) (2005); *Graham v. State*, 171 Ga. App. 242, 250-251 (7) (319 SE2d 484) (1984).

Here, the record shows that the total delay in preparing the requested transcripts was approximately 34 months. Although such a delay is lengthy, "the mere passage of time is not enough, without more, to constitute the denial of due process." (Citation and punctuation omitted.) *Graham*, supra, 171 Ga. App. at 250 (7). Since the reason for the delay is not apparent from the record, we must treat the delay as caused by the State's negligence. See *Johnson*, supra, 313 Ga. App. at 901 (2) (b). Chalk did assert his right by requesting a show cause hearing to determine the reason for the delay in preparing the transcripts. Chalk waited nearly two years after his conviction in December 2008 to assert his right, and this factor is weighed against him. See *Nealy*, supra, 246 Ga. App. at 754 (3). As to prejudice, Chalk makes no showing that the delay in preparing the transcripts prevented him from presenting an adequate appeal or impaired a defense that would otherwise be available to him. See *Glenn v. State*, 279 Ga. 277, 279-280 (3) (612 SE2d 478) (2005); *Graham*, supra, 171

11

Ga. App. at 250-251 (7). Contrary to Chalk's claim, the period of post-conviction incarceration is not, in and of itself, a violation of his due process rights. See *Smith*, supra, 274 Ga. App. at 572 (4); *Graham*, supra, 171 Ga. App. at 251 (7). Balancing the *Barker-Doggett* factors, Chalk has failed to show that the delay in filing of the transcripts was a violation of his due process rights. Accordingly, we affirm.

*Judgment affirmed. Ray and Branch, JJ., concur*.