**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 22, 2014**

# In the Court of Appeals of Georgia

A14A1237. CONLEY v. THE STATE.

MILLER, Judge.

Following a jury trial, Barry Lamar Conley was convicted of three counts of aggravated sodomy (OCGA § 16-6-2 (a) (2)), two counts of child molestation (OCGA § 16-6-4 (a) (1)), and one count of battery (OCGA § 16-5-23.1 (a)).[1] Conley appeals from the denial of his motion for new trial, contending that (1) the trial court erred in denying his motion for a directed verdict because the State failed to prove force as an element of aggravated sodomy; (2) the trial court failed to exercise its discretion in ruling on his motion for new trial; and (3) he received ineffective assistance from trial counsel. For the reasons that follow, we affirm.

---

[1] Conley was also charged with and found guilty of three counts of aggravated child molestation (OCGA § 16-6-4 (c)), but the trial court merged these counts into his convictions for aggravated sodomy.

Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. *Wallace v. State*, 294 Ga. App. 159 (1) (669 SE2d 400) (2008). So viewed, the evidence shows that Conley was a longtime friend of the victims' stepfather, Jose Garcia. Garcia, the victims – Jonah C. and Jeremiah C. – and the victims' sisters regularly visited Conley at his apartment. The victims referred to Conley as "Uncle Barry."

Beginning in 2006, the victims started staying overnight with Conley. Sometimes Garcia would spend the night as well. Generally, Jeremiah slept in Conley's bed alongside Conley, and Jonah slept on the floor on Conley's side of the bed. During his second overnight stay, Jonah was frequently awakened by "things" touching him. When Jonah looked to see what had touched him, he saw nothing in sight, so he went back to sleep. Jonah described how the touching got worse at subsequent visits, and at one point, he caught Conley rubbing his back. Jonah did not report the incident because he thought Conley was asleep.

In 2008, Conley moved to an apartment near the airport in Clayton County. The victims continued to visit Conley at this apartment and spend the night in Conley's bedroom. On one occasion when Jonah was 12 years old, Conley went into the

bathroom while Jonah was showering. Conley reached into the shower and rubbed Jonah's back.

At a subsequent visit, Jonah asked if he could sleep in the downstairs living room, causing Conley to get mad. Thereafter, while Jonah was sleeping in Conley's bed, he felt Conley touching him on his butt. Jonah then moved to another room.

At another overnight visit, while Jonah was sleeping on the couch, Conley lay down next to Jonah and put his hands on Jonah's penis. Conley told Jonah to be quiet as he rubbed Jonah's penis. At a later visit, Conley sat next to Jonah on the couch and began rubbing Jonah's penis. Conley then removed Jonah's pants and underwear and performed oral sex on Jonah while he masturbated. Conley stopped once he ejaculated. Jonah described that he was on the bottom while Conley was on top, and that he was very scared during the incident.

About a week later, Jonah was asleep in Conley's bed when he was awakened by Conley, who had placed his hands under Jonah's clothes and was rubbing Jonah's penis. Conley then removed Jonah's clothes and performed oral sex on Jonah. While performing oral sex, Conley masturbated and also bit Jonah's penis, leaving a visible mark. After he ejaculated, Conley grabbed Jonah's penis, applied a lubricant, and put

3

Jonah's penis inside his anus. Conley told Jonah, who was crying, to be quiet. After that encounter, Jonah did not want to visit Conley anymore.

During the time that Conley molested Jonah, he also molested Jeremiah at his Clayton County apartment. Jeremiah described that Conley would touch and rub his penis, and that Conley forced him to touch Conley's penis. Conley touched Jeremiah's penis more than once, using his hands and penis. In April 2010, Conley placed his mouth on Jeremiah's penis and performed oral sex on him. Jeremiah, who was 11 years old at the time, stated that this happened more than once and that Conley would remove Jeremiah's penis from his underwear. Conley begged Jeremiah not to tell anyone about the incidents and gave Jeremiah a cell phone, toys, and money.

Jonah stated that he did not report the abuse at that time because he was afraid of what would happen and how people would react. Jonah eventually told his family that Conley was molesting him, and his family called the police.

At trial, the State presented similar transaction evidence showing that in 1991 Conley pled guilty to aggravated child molestation for placing his mouth on a three year old's penis. Other similar transaction evidence showed that in 1993, Conley pled guilty to child molestation and aggravated child molestation for placing his hand and mouth on the penis of an eight-year-old boy.

1. In related enumerations of error, Conley contends that the trial court erred in denying his motion for a directed verdict on the aggravated sodomy counts because the evidence was insufficient.[2] "The same standard of review applies to the enumeration of error for the denial of the motion for directed verdict and to the enumeration of error for the sufficiency of the evidence, so we will consider these enumerations together." (Citation and footnote omitted.) *Maynor v. State*, 257 Ga. App. 151 (570 SE2d 428) (2002). Specifically, Conley argues that the State failed to establish the element of force, which the State was required to do since the victims were older than ten years of age at the time of the offenses. After a thorough review, we disagree.

OCGA § 16-6-2 (a) (2) provides in part that "[a] person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person or when he or she commits sodomy with a person who is less

---

[2] In his enumerations of error, Conley asserts that there was insufficient evidence to convict him of the charged offenses and the trial court erred in denying his motion for a directed verdict, which was made on all counts. However, in his argument, he asserts only that the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to sustain his aggravated sodomy convictions. Accordingly, Conley has abandoned any challenge to his convictions for child molestation and battery on sufficiency grounds because he did not provide legal argument or citation of authority. See *Jones v. State*, 289 Ga. App. 219, 221 (1), n.1 (656 SE2d 556) (2008).

than ten years of age." Sodomy is any sexual act involving the sex organs of one person and the mouth or anus of another. See OCGA § 16-6-2 (a) (1).

> [T]he term force includes not only physical force, but also mental coercion, such as intimidation. Lack of resistance, induced by fear, is force. Moreover, force may be proved by direct or circumstantial evidence. And . . . only a minimal amount of evidence is necessary to prove that an act of sodomy against a child was forcible.

(Citations and punctuation omitted.) *Boileau v. State*, 285 Ga. App. 221, 223 (1) (a) (645 SE2d 577) (2007).

(a) *Jonah*. The indictment alleged that between May 10, 2008 and May 10, 2010, Conley unlawfully performed a sexual act that involved Jonah's sexual organ and Conley's mouth (Count 1) and Jonah's sexual organ and Conley's anus (Count 2).

The evidence discussed above was sufficient to establish the element of force with respect to both counts. Notably, at the time of the oral and anal sex offenses, Jonah was approximately 12 or 13 years old. When the molestation first started, Jonah attempted to avoid the abuse by asking to sleep in a different room, and Conley reacted by getting mad. Jonah also tried to stop the abuse by sleeping on the couch, instead of Conley's bed, only to have Conley follow him to the couch and tell him to be quiet as Conley rubbed his penis. On one occasion when Conley performed oral

6

sex on Jonah, he removed Jonah's clothes, told Jonah to remain quiet, and was "on top" of Jonah. On another occasion, Conley bit Jonah's penis. Jonah was very scared when Conley performed oral sex on him and he cried when Conley inserted his penis into Conley's anus. Moreover, Jonah did not report the abuse because he was afraid.

Since the amount of evidence to prove force against a child, such as Jonah, is minimal, the jury was authorized to conclude that Conley used force when he performed oral sex on Jonah (Count 1) and when he inserted Jonah's penis into his anus (Count 2). See *Boileau*, supra, 285 Ga. App. at 223 (1) (a) (evidence sufficient to convict for aggravated sodomy where victim's lack of resistance was induced by fear given the victim's testimony that she was "very scared" and that she wanted defendant to stop).

(b) *Jeremiah*. The indictment alleged that Conley unlawfully performed oral sex on Jeremiah between April 1, 2010 and July 17, 2011 (Count 9). Jeremiah was 11 years old at the time of the April 2010 offense. The evidence shows that Conley removed Jeremiah's penis from his underwear, touched and rubbed Jeremiah's penis, and forced Jeremiah to touch his penis. In April 2010, Conley placed his mouth on Jeremiah's penis. Conley begged Jeremiah not to tell anyone about the sexual molestation and bribed him to keep silent. Jeremiah also testified that, after the first

7

incident involving oral sex, he was not sure if he wanted to continue sleeping in Conley's room, suggesting that he wanted the abuse to stop.

Given the evidence that Conley was referred to as "Uncle Barry," he forced Jeremiah to touch his penis, he removed Jeremiah's underwear before molesting him, and he attempted to keep Jeremiah silent, as well as evidence showing that Jeremiah wanted the abuse to stop, the jury was authorized to conclude that Jeremiah was forced to engage in oral sex in April 2010. See *Boileau*, supra, 285 Ga. App. at 223 (1) (a) (defendant's actions in pulling down the victim's pants and underwear while she was asleep is evidence of physical force); *Schneider v. State*, 267 Ga. App. 508, 510 (1) (603 SE2d 663) (2004) (force may be inferred by evidence of intimidation arising from a close, family-like relationship).

Accordingly, the evidence was sufficient to support Conley's three convictions for aggravated sodomy, and the trial court did not err in denying his motion for a directed verdict as to these offenses.

2. Conley also contends that the trial court erred by failing to exercise its discretion and decide on the merits whether he was entitled to a new trial. We disagree.

8

Where, as here, a defendant asserts that the verdict was "contrary to evidence and the principles of justice and equity and was decidedly against the weight of the evidence," the trial court has "broad discretion to sit as a thirteenth juror and weigh the evidence on a motion for new trial alleging these general grounds." *Choisnet v. State*, 292 Ga. 860, 861 (742 SE2d 476) (2013); see also OCGA §§ 5-5-20, 5-5-21. A trial court reviewing a motion for new trial based on these grounds has a duty to exercise its discretion and weigh the evidence to determine whether a new trial is warranted. See *Hartley v. State*, 299 Ga. App. 534, 540 (3) (683 SE2d 109) (2009). "If the record reflects that the trial court failed to exercise its discretion and sit as the thirteenth juror, we will vacate and remand for the trial court to fulfill its affirmative statutory duty." (Citations omitted.) Id. However,

> in interpreting the language of an order overruling a motion for a new trial, it must be presumed that the trial judge knew the rule as to the obligation thus devolving upon him, and that in overruling the motion he did exercise this discretion, unless the language of the order indicates to the contrary and that the [trial judge] agreed to the verdict against his own judgment and against the dictates of his own conscience, merely because he did not feel that he had the duty or authority to override the findings of the jury upon disputed issues of fact.

(Citation and punctuation omitted.) *Moore v. Stewart*, 315 Ga. App. 388, 391 (3) (727 SE2d 159) (2012).

9

In this case, Conley has not identified anything in the record suggesting that the trial court failed to apply the proper standard in considering Conley's new trial motion. The trial court's order shows that, in addition to addressing the legal sufficiency of the evidence, the trial court specifically addressed Conley's argument under OCGA § 5-5-20 and concluded that the verdict was not contrary to the evidence. Although the trial court did not make an express ruling as to OCGA § 5-5-21, nothing in the record suggests that the trial court applied the wrong standard or declined to exercise its discretion. For this reason, the verdict must be upheld. "This [C]ourt will not presume the trial court committed error where that fact does not affirmatively appear." (Citation omitted.) *Matthews v. State*, 294 Ga. App. 836, 841-842 (4) (670 SE2d 520) (2008). Given that the trial court made a legal sufficiency determination and expressly considered the OCGA § 5-5-20 claim, there is no need for a remand in this case. See *Brockman v. State*, 292 Ga. 707, 714-715 (4) (b) (739 SE2d 332) (2013) (concluding that there was no need for a remand where, although the trial court did not specifically cite OCGA §§ 5-5-20 and 5-5-21, its order showed that it made a legal sufficiency *and* a discretionary determination). Compare *Walker v. State*, 292 Ga. 262, 264-265 (2) (737 SE2d 311) (2013) (vacating denial of motion

10

for new trial and remanding case where trial court's order showed that it evaluated whether the evidence was legally sufficient). Consequently, Conley's claim fails.

3. Conley claims that he received ineffective assistance of counsel in several respects.

> To prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Appellant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.

(Citations omitted.) *Boatright v. State*, 308 Ga. App. 266, 267 (1) (707 SE2d 158) (2011). Applying these standards, we turn to address Conley's claims.

(a) Conley contends that trial counsel was ineffective for failing to object to the expert forensic interviewer's testimony that Jeremiah's testimony was not coached, because the expert's testimony was improper witness bolstering. We disagree.

"Decisions regarding when and how to raise objections are generally matters of trial strategy, and such strategic decisions do not constitute deficient performance unless they are so patently unreasonable that no competent attorney would have

11

chosen them." (Punctuation and footnote omitted.) *Nesbitt v. State*, 296 Ga. App. 139, 142 (3) (d) (673 SE2d 652) (2009).

At the motion for new trial hearing, although trial counsel was asked if he remembered the expert witness's testimony about whether Jeremiah was coached, he was not specifically asked about his decision not to object to such testimony. Conley's "failure to ask trial counsel about this matter at the new-trial hearing means that we must presume counsel was acting strategically, thereby vitiating any ineffective assistance claim." (Citations and punctuation omitted.) *Jones v. State,* 304 Ga. App. 109, 114 (2) (b) (695 SE2d 665) (2010). See also *Allen v. State,* 299 Ga. App. 201, 204 (1) (b) (683 SE2d 343) (2009) (any decision not to object is presumed to be a strategic one that does not amount to ineffective assistance where defendant failed to question counsel about it at the new trial hearing). Moreover, this Court has repeatedly held that a witness does not improperly bolster a victim's credibility by testifying that the witness saw no evidence of coaching. See, e.g., *McCowan v. State*, 302 Ga. App. 555, 557 (1) (691 SE2d 360) (2010); *Stillwell v. State*, 294 Ga. App. 805, 807 (2) (a) (670 SE2d 452) (2008). Therefore, Conley has not established that trial counsel was ineffective on this basis.

(b) Conley also contends that trial counsel was ineffective for failing to file a special demurrer to challenge the lack of specificity as to the date of the crimes. We disagree.

"To succeed on his ineffective assistance claim, [Conley] was required to show that his trial counsel's failure to specially demur materially impacted his ability to present a defense, thereby creating a reasonable probability that counsel's deficiency changed the outcome of the case." (Citation and punctuation omitted.) *Lewis v. State*, 304 Ga. App. 831, 837 (5) (698 SE2d 365) (2010). Further, as this Court has previously noted, "because a defendant can be re-indicted after the grant of a special demurrer, a failure to file such a demurrer generally will not support a finding of ineffective assistance of counsel." *Washington v. State*, 298 Ga. App. 105, 106 (679 SE2d 111) (2009).

Here, the indictment gave a range of dates that properly advised Conley of the charges and gave him the opportunity to prepare a defense to those charges. Since Conley did not assert the defense of alibi, the specificity of dates would not have been helpful. See *Stanford v. State*, 288 Ga. App. 463, 467 (1) (d) (654 SE2d 173) (2007). Accordingly, trial counsel did not err in failing to request a special demurrer under the circumstances. See id. See also *Chapman v. State*, 318 Ga. App. 514, 517 (1) (a)

13

(733 SE2d 848) (2012) (no prejudice resulting from trial counsel's failure to file a special demurrer where defendant failed to establish that the alleged lack of specificity in the indictment affected his defense). Since Conley has failed to establish that trial counsel was ineffective, the trial court did not err in denying his motion for new trial.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*