**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 18, 2019**

# In the Court of Appeals of Georgia

A19A1291. COOK v. THE STATE.

BROWN, Judge.

Edward Cook appeals from his convictions of armed robbery, aggravated assault, and possession of a knife during the commission of a crime and the denial of his motion for new trial. He contends that (1) the verdict was decidedly and strongly against the weight of the evidence and (2) the unreasonable delay in preparation of the transcript was a violation of his due process rights. For the reasons explained below, we affirm in part, vacate in part, and remand the case with direction.

On appeal from a criminal conviction, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient for the jury to find the defendant guilty beyond a reasonable doubt.

*Oduok v. State*, 347 Ga. App. 178 (817 SE2d 145) (2018). So construed, the evidence shows that Cook was living with his mother, the victim, at the time of the incident. Cook arrived at the home and entered his mother's bedroom where he proceeded to go through her purse. The mother, who was in a wheelchair, confronted Cook and asked him what he wanted. Cook responded that he wanted money. When the mother told Cook she had no money, he threw her onto the foot of the bed. Cook dumped the contents of the purse on the bed and floor and continued to demand money from his mother. When she again responded she had none, he held a butterfly knife to her neck. Eventually, Cook found $43 in cash, along with his food stamp and unemployment cards, which the mother had been keeping for him. Cook then fled. When police arrived at the home, the purse contents were strewn on the bed and bedroom floor. The mother was unharmed, but visibly upset and uncontrollably crying. When police apprehended Cook later that day, he did not have a knife.[1] Cook agreed to give a written statement and admitted robbing his mother for drug money, but denied using a knife.

---

[1] The knife used in the crime was never recovered.

1. In his motion for new trial, Cook asserted that the verdict was "decidedly and strongly against the weight of the evidence" and "contrary to the evidence . . . [and] to the laws and principles of justice and equity." On appeal, Cook again argues that the trial court should have vacated his convictions on the "general grounds."

> The judge presiding over the trial of a case may grant a new trial "when the verdict of a jury is found contrary to evidence and the principles of justice and equity. . . ." OCGA § 5-5-20. The presiding judge, in the exercise of sound discretion, may grant a new trial in a case in which "the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." OCGA § 5-5-21. The grounds set forth in these statutes are commonly known as the "general grounds" for new trial, and this Court has stated that OCGA § 5-5-21 authorizes the trial judge to sit as a "thirteenth juror" and to exercise his or her discretion to weigh the evidence on a motion for new trial alleging these general grounds. Pursuant to this statute, a trial judge is vested with the "strongest of discretions" to review a case and to set the verdict aside if the judge is not satisfied with it. . . . A trial court, however, does not properly exercise its discretion when it applies an improper legal standard of review, as opposed to its own discretion as the thirteenth juror, to the general grounds for new trial.

(Citation omitted.) *State v. Holmes*, 304 Ga. 524, 531-532 (3) (820 SE2d 26) (2018). In *Choisnet v. State*, 292 Ga. 860 (742 SE2d 476) (2013), our Supreme Court

3

explained that "a trial court does not fulfill its duty to exercise its discretion when it applies the standard of review set out in *Jackson v. Virginia* to the statutory grounds for new trial." Id. at 861.

Here, the trial court found that "[t]he evidence admitted at trial consisting of testimony from the victim . . . and [the investigator] is sufficient under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 [(99 SCt 2781, 61 LE2d 560)] (1979)." Given the wording of the trial court's order and its finding with regard to the sufficiency of the evidence, it is clear that the trial court failed to apply the proper standard. Accordingly, the judgment must be vacated and the case remanded to the trial court for consideration of the motion for new trial under the proper legal standard. See *Choisnet*, 292 Ga. at 861. See also *State v. Wilkerson*, 348 Ga. App. 190, 198 (2) (820 SE2d 60) (2018) (vacating grant of motion for new trial and remanding case to trial court to reconsider the general grounds under the proper legal standard), cert. granted (Aug. 5, 2019).

2. Cook asserts that the delay in preparation of the trial transcript violated his due process rights and that the trial court erred in denying his motion for new trial on this ground. We disagree.

Cook's trial took place on October 20, 2014, and the trial court sentenced him on October 21, 2014. Cook's trial counsel filed a motion for new trial on October 24, 2014. On January 7, 2015, a consent continuance of Cook's motion for new trial was filed because the trial transcript had not yet been filed, although it had been requested. On February 6, 2015, the official request for the trial transcript was filed.[2] The trial court held a hearing on February 20, 2015, at which the court reporter was present. A gap of over two years followed with no transcript filed.

On November 2, 2017, the trial court issued an order requiring the court reporter to appear at every subsequent status hearing to update the court on the status of the trial transcript. Various emails in the record reflect that Cook's appellate counsel consistently contacted the court reporter, asking about the transcript. On more than one occasion, the court reporter informed the trial court clerk and appellate counsel that the transcript would be ready and filed on a certain date, but failed to follow through on the promise. On December 14, 2017, the trial court held another status hearing, during which the court reporter informed the court that the transcript would be finished by December 18, 2017. However, the court reporter again failed

[2] At the first hearing on Cook's motion for new trial, Cook's trial counsel testified that he requested the transcript in October 2014, but the court reporter failed to sign and file the transcript request until February 2015.

to file the transcript. The trial court held another status hearing on January 9, 2018, at which the court reporter appeared. On February 13, 2018, the court reporter filed the trial transcript. Cook filed an amended motion for new trial, pointing out that the transcript was replete with errors and omissions, and contending that his "convictions should be overturned because the State failed to provide [him] with a complete and correct copy of the trial transcript." On May 16, 2018, the trial court held a hearing on Cook's motion for new trial, during which Cook's appellate counsel presented testimony from the court reporter as to the transcript issues. On the same day, the trial court ordered the court reporter to file a correct and complete transcript by May 25, 2018. The court reporter filed a corrected transcript on May 27, 2018. The trial court held a second hearing on September 5, 2018, to review the newly filed transcript and hear further argument on Cook's motion for new trial. During the hearing, both Cook and the State agreed that the second transcript filed was correct and complete. The trial court denied Cook's motion for new trial in an order filed on the day of the hearing.

"[A] defendant may be denied due process of law where there is an inordinate delay in the appellate process, including an excessive delay in the furnishing of a trial

transcript necessary for completion of an appellate record." *Graham v. State*, 171 Ga.

App. 242, 250 (7) (319 SE2d 484) (1984).

> The similarity of a defendant's interests in a speedy trial and a speedy
> appeal are such that the balancing test adopted for speedy trial violations
> in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972),
> should be applied to situations in which a defendant claims that a delay
> in the appellate process is violative of due process of law. The four
> factors enunciated in *Barker v. Wingo* are the length of delay, the reason
> for the delay, the defendant's assertion of his right, and prejudice to the
> defendant.

(Citations and punctuation omitted.) *Chalk v. State*, 318 Ga. App. 45, 50 (2) (733

SE2d 351) (2012). See also *Chatman v. Mancill*, 280 Ga. 253, 257 (2) (a) (626 SE2d

102) (2006) (adopting the *Barker* analytical framework in cases involving the delayed

resolution of direct appeals from judgments entered on criminal convictions in which

the death penalty was not imposed). However, "unlike in the speedy trial context,

[prejudice] is not presumed but must be shown." *Payne v. State*, 289 Ga. 691, 693 (2)

(b) (715 SE2d 104) (2011). Compare *State v. Porter*, 288 Ga. 524, 533 (2) (d), n.4

(705 SE2d 636) (2011). Indeed,

> [t]he mere passage of time is not enough, without more, to constitute a
> denial of due process. Unless it clearly appears that the delay in filing
> the transcript prevented the presentation of an adequate appeal or

7

> impaired a defense which would otherwise be available to an appellant where a new trial is ordered due to trial error, an appellant has not suffered the prejudice which turns a transcript delay into a violation of due process of law.

(Citations and punctuation omitted.) *Glenn v. State*, 279 Ga. 277, 279-280 (3) (612 SE2d 478) (2005).

Here, the delay in preparing a complete transcript totaled more than three years. The record shows that the delay resulted from the court reporter's apparent difficulties in completing a correct transcript of the trial proceedings. We thus weigh this factor against the State. See *Ruffin v. State*, 284 Ga. 52, 61 (2) (b) (ii) (663 SE2d 189) (2008) ("in the *Barker-Doggett* analysis, the 'government' includes all state actors" and relevant inquiry is whether the government or the criminal defendant is more to blame for the delay). But see *Graham*, 171 Ga. App. at 250 (7) (where length of the trial proceedings coupled with the court reporter's relocation to another state caused the delay, factor was neutral). Cook promptly brought the issue to the trial court's attention and continued to assert his right throughout the three-year delay. However, Cook has made no showing that the delay in preparing the transcripts prevented him from presenting an adequate appeal or impaired a defense that would otherwise be available to him. And as we have previously stated, "the period of

post-conviction incarceration is not, in and of itself, a violation of his due process rights." *Chalk*, 318 Ga. App. at 51 (2). Because Cook has failed to make the requisite showing of prejudice, we conclude that the delay in filing the transcript has not deprived him of due process. See *Chalk*, 318 Ga. App. at 50-51 (2); *Graham*, 171 Ga. App. at 251 (7). Accordingly, the trial court did not err in denying Cook's motion for new trial on this basis.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Barnes, P. J., and Mercier, J., concur*.